**Dorothy Delores PASTERNAK, Plaintiff-Contestant (Respondent),**

**v.**

**Frank MASHAK, and Frank Mashak, Executor of the Last Will and Testament of Elizabeth Milanko, Deceased, Defendants-Proponents (Appellants).**

**No. 52413.**

Supreme Court of Missouri,
Division No. 1.

July 12, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 11, 1967.

Certiorari Denied Jan. 22, 1968.

See 88 S.Ct. 821.

The will in question was executed by Elizabeth Milanko on July 3, 1957. Mrs. Milanko died on December 22, 1959. The will was prepared by the proponent, Frank Mashak, a St. Louis attorney. The will devised and bequeathed the entire estate to Mashak, in trust for the testatrix' husband, Savo Milanko, for his life. Upon the death of the husband, the entire estate went to Mashak or his heirs if he predeceased Savo. Mashak was named executor, without bond. Savo Milanko predeceased the testatrix.

The contestant is the testatrix' sole heir at law. She is the daughter of the only child of the testatrix, a son by a prior marriage. She was born November 22, 1936. Her parents were divorced in 1938 and the custody of the contestant awarded to her mother. Contestant moved with her mother to the State of California at the age of three years and has lived there ever since.

On the retrial, the issue submitted to the jury was whether the will was the result of undue influence by Mashak over the testatrix. The issues on this appeal do not require a detailed account of the evidentiary background of the case. On the trial, the evidence in that respect was substantially as set out in the Court of Appeals opinion, supra. Essentially, it showed that, beginning in 1944, Mashak had represented the testatrix in involved and protracted litigation involving the estate of the father of testatrix' first husband, Dr. Horace Reddish. The litigation was eventually terminated in 1952 by a decree by which the contestant here was awarded a ⅔ interest in fee in farm land in Jersey County, Illinois, and the testatrix a ⅓ interest in fee, with provision that testatrix should receive ¾ of the income during her life and contestant ¼ during such time. The proponent, whose contract with the testatrix called for him to receive 50% of any recovery for the testatrix, thereafter participated actively with the testatrix in the management of the farm property.

According to Mashak's deposition, the income from the farm was received by way

Dubinsky & Duggan, Sidney W. Horwitz, St. Louis, Thomas J. Logue, Mattoon, Ill., for respondent.

Frank Mashak, Ben J. Weinberger, St. Louis, for appellants.

WELBORN, Commissioner.

█ This is an appeal by the proponents of a will from an order of the trial court, granting the contestant a new trial, following a jury verdict upholding the will. A previous appeal to this court involving the same will was transferred to the Court of Appeals because the record showed no basis for jurisdiction of this court. Pasternak v. Mashak, Mo., 383 S.W.2d 760. The St. Louis Court of Appeals thereafter reversed the judgment in favor of the contestant. 392 S.W.2d 631. At the ensuing retrial, evidence was presented that the net value of the estate exceeds $15,000. The jurisdiction of this court is thus established.

of checks payable to himself and testatrix. He would obtain testatrix' endorsement and deposit the checks in *his* account. There was some evidence of a joint account between Mashak and testatrix out of which their share of the expenses of the farm operation were paid.

In 1954, Mashak prepared a deed which testatrix executed whereby her interest in the farm was conveyed to her husband and Mashak as joint tenants, with the income reserved to the testatrix for life. According to Mashak's deposition, a consideration of $1.00 was paid for the deed. "[W]e had a joke about it. He paid fifty cents and I paid fifty cents."

Mashak had prepared two previous wills for Mrs. Milanko. One, dated April 28, 1945, left her property to her husband. A second, dated April 23, 1948, left her estate to her husband and Mashak.

The proponent's evidence was designed to show that the testatrix was grateful to Mashak for his successful efforts on her behalf and regarded him as if he were a son. The evidence also tended to show that the testatrix denied that the contestant was her granddaughter. The contestant's evidence was intended to show essentially the regard which testatrix had for the contestant and the testatrix' wishes or understanding that, upon her death, contestant would receive testatrix' interest in the farm. However, contestant's primary reliance was upon the presumption of undue influence arising from the fiduciary relationship between testatrix and proponent.

The proponent testified at the first trial of the case, but did not do so at the second. Contestant introduced as admissions against interest portions of a deposition of Mashak and answers by him to interrogatories. · On this appeal, the first question presented is whether the trial court properly granted a new trial because it erred in refusing to permit the contestant's attorney, upon argument to the jury, to comment upon the proponent's failure to testify.

The rule which permits an unfavorable inference to be drawn against a party, knowledgeable of the facts of the controversy, who fails to testify and which permits such failure so to be used by an opponent in argument to the jury is well established. Dubail v. Medical West Bldg. Corp., Mo.Sup., 372 S.W.2d 128, 133 [6]; Block v. Rackers, Mo.Sup., 256 S.W.2d 760, 764 [5–8]; Kelsey v. Kelsey, Mo.App., 329 S.W.2d 272, 273 [1]. A trial court's refusal to permit such argument when proper may constitute reversible error (Smith v. Kansas City Public Service Co., 227 Mo. App., 675, 56 S.W.2d 838, 842–843 [6]) and will justify a trial court's granting a new trial. Adam Hat Stores v. Kansas City, Mo.App., 307 S.W.2d 36, 41–42 [8–12]; Mo. Sup., 316 S.W.2d 594, 600 [9].

In this case, appellant asserts various reasons for the correctness of the trial court's original ruling refusing to permit reference to appellant's failure to testify. His first reason, that there was no evidence of his exercise of undue influence over the testatrix and therefore there was no evidence which his testimony might have rebutted, is related to his argument throughout the appeal of the inapplicability of the presumption of undue influence arising from the proponent's relationship to the testatrix and his preparation of the will under which he became the sole beneficiary.

On the prior appeal, the St. Louis Court of Appeals concluded that "the evidence is sufficient to create the presumption [of undue influence] when a will leaving a substantial bequest to an attorney is shown to have been drafted and its execution supervised by him." 392 S.W.2d 637. The court there also held that such presumption, although rebuttable, "makes a prima facie case which does not disappear upon the introduction of rebutting testimony and raises an issue for the jury. Loehr v. Starke, [332 Mo. 131, 56 S.W.2d 772] supra; Pulitzer v. Chapman, 337 Mo. 298, 85 S. W.2d 400; Cuthbert v. Heidsieck, Mo., 364 S.W.2d 583." 392 S.W.2d 636. The con-

clusion of the St. Louis Court of Appeals is applicable on the present appeal and we, therefore, reject the contention that there was nothing which the proponent was obliged to rebut. In this connection, we also reject the proponent's contention that application of the presumption in this case is a violation of his rights under the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. As applied in the case of an attorney, the presumption has a sound basis in the public policy of discouraging transactions between an attorney and client. 7 C.J.S. Attorney and Client § 127 b, p. 966. Its application in this case gives rise to no constitutional questions.

■ Proponent next contends that his testimony would have been merely cumulative, in view of an attesting witness's testimony that she overheard the conversation between proponent and the testatrix in which the testatrix requested proponent to prepare her will. According to the witness, the testatrix "said that she didn't want anyone else in the whole world but her husband, and on his death, for Mr. Mashak to get everything she had, because * * * he was responsible for everything, and been such a long friend through the years when she didn't expect to receive anything, and she said 'that's the way I want it' and her husband agreed, he said 'that's right.' " The witness further testified that, at the execution of the will, proponent read the document and the testatrix stated: "[T]hat's fine, Frank, that's just what I want." However, as a party to the litigation, with knowledge of the entire history of his relationship to the testatrix, there is no reason for the assumption that the proponent's testimony would have been merely corroborative. His conduct was the issue and he was in the best position to explain it. His failure to do so could not be excused on this ground.

■ Appellant further contends that he was incompetent to testify by virtue of the "dead man's" statute and because his

testimony would have been precluded by the attorney-client privilege. The appellant was not a party to a contract or cause of action within the meaning of § 491.010. Therefore, the "dead man's" statute would not have precluded the appellant's testimony. Garvin's Admr. v. Williams, 50 Mo. 206, 212; Norris v. Bristow, 358 Mo. 1177, 219 S.W.2d 367, 11 A.L.R.2d 725; Reidinger v. Adams, Mo.Sup., 266 S.W.2d 610, 612–613 [2]; Wilhoit v. Fite, Mo.Sup., 341 S.W.2d 806, 818 [22–24]. The attorney-client relationship having terminated with the death of the testatrix would have been no bar to proponent's testimony. Thompson v. Ish, 99 Mo. 160, 12 S.W. 510, 513–514; Walton v. Van Camp, Mo.Sup., 283 S.W.2d 493, 499 [4].

■ Finally, appellant's assertion that he was "available" as a witness to be called by the contestant is no answer. Availability is not a factor governing the right to comment when a party, as distinguished from a non-party witness, does not testify.

■ Had the trial court's conclusion on the motion for new trial been that the contestant was not adversely affected by his trial ruling because of the availability of the proponent's deposition, answers to interrogatories and testimony on the previous trial, a different question might have been before us (see Wipfler v. Basler, Mo. Sup., 250 S.W.2d 982, 989). In accordance with our practice in affording greater liberality in favor of an order awarding a new trial, we conclude that the trial court's ruling here was not erroneous.

This conclusion would be sufficient to cause us to affirm the order appealed from. However, we also note the trial court's ruling regarding objections to instructions given at the trial.

Although there were no MAI forms designed particularly for a will contest case, the parties and the court sought to comply with Civil Rule 70.01(e), V.A.M.R. MAI No. 2.01 was given as Instruction No. 1. Instruction No. 2, offered by the plaintiff,

called for a verdict for the plaintiff if the jury believed that the defendant exercised undue influence over the testatrix in the execution of her will. Instruction No. 3 was defendant's converse of this instruction.

Instruction No. 4 was the MAI burden of proof instruction, No. 3.01. Instruction No. 5 set out the presumption of undue influence upon which plaintiff relied. Instruction No. 6 defined "confidential and fiduciary." Instruction No. 7 authorized a finding of undue influence from circumstantial evidence. Instruction No. 8 told the jury that undue influence was not required to have been proved by overt acts at the very time of execution of the will. Instructions Nos. 4 through 8 were offered by plaintiff.

Instructions Nos. 9 through 13 were offered by defendant. We will give more detailed attention to No. 9 in our consideration of the trial court's sustaining the motion for new trial for error in this instruction. Instruction No. 10 defined "undue influence." The instruction then told the jury that "the plaintiff must prove to the jury by a preponderance of the credible evidence that undue influence * * * was actually exercised and exerted over the mind of testatrix by the defendant * * *." Instruction No. 11 told the jury that the testatrix was under no legal duty to mention plaintiff in her will. Instruction No. 12 told the jury that they were not to substitute their views of what testatrix should have done. Instruction No. 13 was MAI No. 2.02.

Instruction No. 14, offered by the court, was the jury verdict form.

■ Among the grounds for new trial which the court sustained was one alleging error in giving defendant's Instruction No. 10 on the grounds that it misdirected the jury on the burden of proof and was inconsistent with plaintiff's Instruction No. 5. Instruction No. 10 should not have been given in view of the limitation upon burden of proof instructions, set out in the Notes on Use to MAI No. 3.01.

■ The trial court also found proponent's Instruction No. 9 erroneous. That instruction told the jury that testatrix had the right to consult whomever she wished for the preparation of her will and that if she did employ proponent for such purpose and he prepared her will in accordance with her intentions and directions, the testatrix was not obliged to seek the aid of any other person to revise or review her will. We think that the trial court properly concluded that the instruction tended to confuse, not clarify, the issues. Whether or not a testator does obtain independent advice is a factor for consideration when a will is prepared for the beneficiary. See In Re Wood's Estate, 374 Mich. 278, 132 N. W.2d 35, 5 A.L.R.3d 1. However, it is only an evidentiary factor, not a conclusive factor, and there was no occasion in this case to call particular attention to such factor by an instruction.

The order granting a new trial is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

HENLEY, P. J., and SEILER and HOLMAN, JJ., concur.

STORCKMAN, J., not sitting when cause was submitted.