**STATE ex rel. ARMSTRONG, TEAS-DALE, SCHLAFLY, and DAVIS, et al., Relators,**

v.

**Honorable Louis M. KOHN, Judge, Circuit Court, St. Louis County, Respondent.**

No. 75055.

Supreme Court of Missouri, En Banc.

March 23, 1993.

Robert S. Allen, David L. Coffman, St. Louis, for realtors.

Mark G. Arnold, St. Louis, for respondent.

ROBERTSON, Chief Justice.

The sole issue in this case is whether Section 473.147.2, RSMo 1986, authorizes a probate court to reopen a previously closed estate without averments in the pleadings that unadministered assets of the estate have been discovered. We hold that the trial court exceeded its authority in reopening the estate. Our preliminary Writ of Prohibition is made absolute.

I.

Thomas J. Corrigan, Sr., died testate on August 21, 1985. A successful businessman, Corrigan had designed a comprehensive and exceedingly complex estate plan prior to his death. The estate plan included a will and multiple-layers of interrelated and independent trust agreements. On October 8, 1985, the Probate Division of the Circuit Court of St. Louis County granted letters testamentary to two of the decedent's children. These personal representatives administered the estate and filed a final settlement of the estate on August 16, 1987. The probate court entered its order terminating the estate on September 17, 1987.

Armstrong, Teasdale, Schlafly and Davis ("Armstrong, Teasdale"), a large St. Louis law firm, advised decedent in both his personal and his business affairs. Of particular interest to this litigation is that Armstrong, Teasdale drafted the decedent's estate plan.

In 1990, the Corrigan family, the Corrigan Companies, and the Corrigan Trusts terminated their relationship with Armstrong, Teasdale. At that time, the decedent's widow asked the law firm to return all papers relating to Armstrong, Teasdale's representation of the decedent—individually and in his various business capacities. Armstrong, Teasdale provided Mrs. Corrigan with all final documents, but refused to release its work papers. Mrs. Corrigan filed suit to recover the papers. The trial court dismissed the action. The Court of Appeals, Eastern District, affirmed. This aspect of the case is more fully reported in *Corrigan v. Armstrong, Teasdale, Schlafly and Davis*, 824 S.W.2d 92 (Mo.App.1992). (*"Corrigan I"*).

Immediately following the unsuccessful result in *Corrigan I*, Thomas J. Corrigan, Jr., and Ellen M. Clay, the original personal representatives, filed a "Petition to Reinstate Personal Representatives" in the Probate Division of the Circuit Court of St. Louis County. In language best characterized as nebulous, the March 25, 1992 petition stated that the petitioners "have developed reason to believe that the administration of the estate has not been completed and there remains unfinished business of the estate requiring additional administration."

On April 8, 1992, the probate court entered its order reopening the estate. Thereafter, the petitioners filed a "Motion for Order Compelling Access to Information." This motion sought access to all files in Armstrong, Teasdale's possession or control relating to the representation of Thomas J. Corrigan, Sr. Armstrong, Teasdale filed suggestions opposing the motion. Following a hearing, respondent, Judge Kohn, indicated he would enter an order sustaining the motion in thirty days. Armstrong, Teasdale filed its Petition for a Writ of Prohibition prior to the entry of the order. We issued our preliminary Writ of Prohibition, which we now make absolute.

## II.

■ The probate code is exclusive. Section 472.005, RSMo 1986. Section 473.147.2 provides the sole procedural mechanism for reopening a previously closed estate.

If, after final settlement of an estate is had and the executor or administrator has been discharged, unadministered assets of the estate are discovered, letters of administration of the goods remaining unadministered, if there are unpaid allowed claims or if other good cause is shown, may be granted to those to whom administration would have been granted if the original letters had not been obtained. . . .

The statute requires an affirmative response to three levels of inquiry before letters of administration will issue to reopen an estate. First, the probate court must determine whether the estate is closed and the executor discharged. If so, the court moves to determine whether "unadministered assets of the estate are discovered." Provided the first two inquiries are satisfied, the court must find the existence of either unpaid claims or "other good cause" before the estate may be opened. If any of the inquiries is answered in the negative, the estate must remain closed.

On September 17, 1987, the probate court entered its order terminating Mr. Corrigan's estate. The parties agree that the decedent's estate is closed and his personal representatives discharged. Analysis under Section 473.147.2, therefore, proceeds to the second inquiry.

Have "*unadministered* assets of the estate [been] *discovered?*" [Emphasis added]. We assume, without deciding the issue, that the right of access to attorney files relating to legal work completed at the direction of the decedent—work papers and internal memoranda in the possession of Armstrong, Teasdale—is an asset within the meaning of the probate code. Considering the papers as assets, the estate can be reopened only if assets are discovered *after* final settlement of the estate and the discharge of the executor *and* the assets are of the sort that can be administered.

■ To "discover" is "to make known (something secret, hidden, unknown, or previously unnoticed)." Webster's Third New International Dictionary, 647 (1976). Thus, assets are discovered only if they were previously unknown or unnoticed.

■ Missouri is a fact pleading state. The underlying petition in this case makes no factual claim asserting that assets have been discovered. Instead, it charges "that the administration of the estate has not been completed." This conclusory statement does not aver facts which, if true, justify reopening the estate under Section 473.147.2.

Moreover, the petition does not claim that there are "goods remaining unadministered." Section 473.147.2. What little clue we can obtain from the record shows only that the personal representatives' motive is to acquire "access to said file to interpret the final estate planning documents." (Motion for Order Compelling Access to Information.) By their own words, the personal representatives do not seek to administer the documents, as required by the statute. They want to look at the documents for another purpose.

■ In sum, the pleadings in this case fail to set out a sufficient factual basis to authorize the probate court's order reopening the decedent's estate under Section 473.147.2. The statute requires more than vague conclusory statements; it requires those seeking to reopen an estate to state with particularity the facts upon which the court can conclude that specific assets of the estate are newly discovered and are subject to administration in accordance with the directives of the decedent's will or along the lines of intestate succession. The personal representatives make no factual claim that they have discovered assets after the estate closed and they were discharged; there is no factual averment laid before the probate court that would support a judicial finding that goods or assets of the decedent remain unadministered. Having failed to meet the requirements of Section 473.147.2, indeed in stating reasons for reopening the estate that are clearly

outside the authority of Section 473.147.2, the personal representatives fail to invoke the statutory authority of the probate court to reopen the estate. The probate court, therefore, exceeded its jurisdiction in reopening the Corrigan estate.

### III.

■ Prohibition lies to prohibit a trial court from exceeding its jurisdiction. *State ex rel. City of St. Louis v. Kinder*, 698 S.W.2d 4, 6 (Mo. banc 1985).

### IV.

Our preliminary Writ of Prohibition is made absolute.

HOLSTEIN, BENTON and LIMBAUGH, JJ., concur.

COVINGTON, J., concurs in result in separate opinion filed.

PRICE, J., concurs in part and dissents in part in separate opinion filed.

THOMAS, J., concurs in opinion of PRICE, J.

COVINGTON, Judge, concurring in result.

I concur in the result of the principal opinion that the probate court exceeded its jurisdiction in the opening of the Corrigan estate. I do so for reasons different from those expressed in the principal opinion. In my view, even if there were an allegation that unadministered assets had been discovered, I do not believe that the property which is or may be alleged to be an "asset" in this case should be construed to be an asset under any circumstances for purposes of application of § 473.147.2, RSMo 1986.

Assets for the purposes of administration of a decedent's estate are generally defined as property of any kind, whether real or personal, tangible or intangible, legal or equitable, which can be made available for the payment of debts. *Mutual Life Ins. Co. of New York v. Farmers and Mechanics Nat'l Bank*, 173 F. 390, 397 (C.C.S.D.Ohio 1909); *State ex rel. Hills v. District Court*, 118 Mont. 622, 169 P.2d 556, 558 (1946); *Citizens Bank, Drumright v. Satcher*, 521 P.2d 819, 821 (Okla.1974). This definition can be traced to Justice Story's definition:

> [A]ll personal property of the deceased, which is of a salable nature, and may be converted into ready money is deemed assets. But the word is not confined to such property, for all other property of the deceased which is chargeable with his debts and legacies, and is applicable to that purpose is, in a larger sense, assets.

*Bragdon v. Smith*, 136 Me. 474, 12 A.2d 665, 666 (1940) (quoting Story, Equity Jurisprudence, para. 531).

The "assets" to which the petitioners in the underlying case seek access, the relators' confidential papers, are neither of a salable nature nor are they property of any kind that can be made available for the payment of debts.

Section 473.147.2 can be read, however, to broaden the traditional definition of an asset as property available for the payment of debts in that "the goods remaining unadministered" may be administered not only if there are unpaid allowed claims, but also if "other good cause is shown." § 473.147.2. What may constitute "good cause" for the purposes of reopening an estate for administering the newly discovered assets or goods has not been previously decided. Missouri commentators assume, however, that "other good cause" is distribution of the assets or goods to distributees having a right to the personal property or entitlement to the real property. 5A John Borron, Jr. and Francis M. Hanna, Missouri Practice, Probate Law and Practice, § 1523, p. 732 (2d ed. 1990). Judge Borron and Professor Hanna's assumption appears correct in that passing title to property to distributees of an estate and making payment of unpaid debts, claims or demands against the decedent or his estate are the very purposes of administration of an estate.

There are other forums in which the petitioners in the underlying case can seek or could have sought relief. As the principal

opinion notes, the probate code is exclusive. It provides a limited forum for limited purposes. The probate code is replete with time limitations, presumably in the interests of accountability and finality. Section 473.147.2 permits the reopening of an estate for the narrow purposes of administering assets or goods discovered after an estate is closed if there are unpaid allowed claims or if there is need for passing title to distributees, nothing more. To expand § 473.147.2 in the manner in which petitioners in the underlying case seek to do is to broaden § 473.147.2 to a point where any conceivable property is an "asset" and any "cause" is "good."

For the reasons above stated, I concur in the result of the principal opinion insofar as it holds that the probate court exceeded its jurisdiction.

PRICE, Judge, dissenting in part and concurring in part.

I respectfully dissent in part and concur in part. In doing so, I am not unmindful of the adage that bad facts make bad law. This adage applies no less to my opinion than to the others filed herein.

### I.

The majority is correct in concluding that the Petition to Reinstate Personal Representative, standing alone, fails to plead sufficient facts to state a cause of action under *§ 473.147.2.* However, the record below contains more. The Corrigan heirs also filed an affidavit of Michael G. Goldstein[1] which, if considered along with the petition, would state a claim under the statute. Because the issue below was not resolved on the pleadings, but was actually joined and decided on the substantive merits of the claims made, I believe it is appropriate to treat the Corrigan heirs' petition as amended to conform to the evidence presented. *See Rule 55.33(b), Mo.R.Civ. Proc.*

1. A copy of this affidavit is attached.

2. As will be discussed, Armstrong Teasdale's behavior in refusing to disclose this information may be entirely appropriate.

I would hold that "good cause" for reopening an estate may be found where it is necessary to examine attorney files for factual information relating to work done for the decedent in order to further the interests of the decedent. In such a circumstance, factual information is an asset of the estate that must be administered by a decision regarding whether to waive the attorney-client privilege and disclose the information. The information is newly discovered because it was and is in the possession of attorneys who represented the estate, who now object to its disclosure, and who made no showing that they presented the issue to the personal representative for a decision (administration of the assets) while the estate was open.[2] Accordingly, I dissent from the opinion of the majority holding that the probate court was without jurisdiction to hear the Motion for Order Compelling Access to Information.

I believe, however, the probate court exceeded its jurisdiction by ordering that the documents at issue be produced upon the record before it. The Corrigan heirs, here acting as personal representatives, have not established that disclosure of these documents will protect or further the interests of the deceased, Thomas J. Corrigan, which should be the primary focus of inquiry.

### II.

It is admitted by Armstrong Teasdale that they possess certain documents in connection with their past representation of Mr. Corrigan. Documents containing *actual information* concerning Mr. Corrigan's desires or decision-making considerations may possess value regarding the proper interpretation of the legal instruments executed by him.[3]

At his death, Armstrong Teasdale is bound by two conflicting duties regarding the disclosure of attorney-client information obtained in the course of their representation of Mr. Corrigan. One of those duties is set out in our *Rule of Profession-*

3. Documents containing actual information concerning Mr. Corrigan's desires should be distinguished from mere lawyers' working papers.

*al Conduct 4–1.16(d)*, which states as follows:

> Upon termination of representation, a lawyer *shall take steps to the extent reasonably practicable to protect a client's interests, such as* giving reasonable notice to the client, allowing time for employment of other counsel, *surrendering papers and property to which the client is entitled* and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law. (Emphasis added.)

Another duty is to assert on Mr. Corrigan's behalf the attorney-client privilege to the extent that disclosure of the papers would harm his interests. *Rule 4–1.6.*

Mr. Corrigan obviously is not available to speak for himself. We must assume that his purpose in seeking Armstrong Teasdale's legal services was to create a trust plan that would accomplish his goals. We must further assume that by executing the various wills and trust instruments, he believed that they would carry out those goals.

If his heirs seek this information for the purpose of *contesting such documents*, it is doubtful that Mr. Corrigan's interests would be served by disclosing them. It was his right, not his heirs', to dispose of his property as he saw fit. It was his right to subject the property disposed to a complex series of trusts, if he so chose.

To the contrary, if the heirs seek to modify the trusts to better accomplish his purposes, or to make a claim against his lawyers for a failure to use the appropriate standard of care in attempting to accomplish Mr. Corrigan's purposes,[4] disclosure might, in fact, serve his interests.

The extent to which the attorney-client privilege precludes the disclosure of a deceased client's statements or documents has not been stated consistently by the courts. *See 66 A.L.R.2d 1302.* The topic was most recently addressed by this Court in *Pasternak v. Mashak*, 428 S.W.2d 565 (Mo.1967), *cert. denied*, 390 U.S. 907, 88 S.Ct. 821, 19 L.Ed.2d 872 (1968). There, it was stated that:

> The attorney-client relationship having terminated with the death of the testatrix would have been no bar to proponent's testimony.

*Id.*, 428 S.W.2d at 569. In *Koontz v. Owens*, 109 Mo. 1, 18 S.W. 928 (1892), however, the Court indicated that the privilege should apply against a person contesting a deed involved in an estate plan. There, the Court stated:

> If the communications made by a man to his attorney in the privacy of his office, just on the eve of finally disposing of all his worldly goods, when he must have his property in mind and desires to know the effect of his devises, are admissible, then the rule has little to commend it.

*Id.*, 18 S.W. at 929.

While the language of these cases appears contradictory, an examination of their particular facts reveals otherwise. In *Pasternak*, the evidence introduced was supportive of the decedent's will and was used against an undue influence challenge. 428 S.W.2d at 568. In *Koontz*, the evidence proposed would have been detrimental to a will drafted by the attorney and, if admitted, "would destroy the practical effect of his own work." 18 S.W. at 929. When read together, these cases stand for the proposition that the attorney-client privilege survives the death of the client, but it can and should be waived if it can be shown that a waiver is in the best interests of the decedent.

While the Corrigan heirs have established *their* possible need for these documents, they have not established whether the disclosure of the documents at issue would serve or harm the interests of Thomas Corrigan. As such, the probate court acted in excess of its jurisdiction in order-

---

4. The purpose for which the Corrigan heirs seek these documents is unclear. In *Corrigan I*, the Court understood the documents were to be used to determine if a malpractice action might exist. 824 S.W.2d at 99. In this proceeding, such a purpose was expressly disavowed and the reason stated for seeking the documents was to assist in interpreting the various trust instruments.

ing Armstrong Teasdale to provide the documents to the Corrigan heirs upon the record before it.

The necessary record cannot be made without an objective examination of the documents at issue. Given the history of this case, none of the parties to this matter are in a position to make an objective examination. Accordingly, prior to any order of disclosure of these documents to the Corrigan heirs, the probate court should order that copies of all documents containing historical information (as opposed to documents that solely reflect attorneys' thoughts and work process) be produced, in camera, or to a master appointed by the trial court, to determine whether Mr. Corrigan's interests would be protected or furthered by disclosure. This may well be a difficult decision because the evidence may be mixed. Because a waiver of the attorney-client privilege as to some documents usually constitutes a waiver as to all documents, the decision might require a delicate balancing. Only if the court or the master determines that the privilege should be waived may the documents be made available to a properly interested party. The costs of this examination, of course, should be assessed to the Corrigan heirs seeking the disclosure of the documents.

ATTACHMENT

IN THE PROBATE DIVISION
OF THE CIRCUIT COURT

ST. LOUIS COUNTY, MISSOURI

In re: The Estate of

THOMAS J. CORRIGAN, SR.,

Deceased.

Estate No. 84951

AFFIDAVIT OF MICHAEL
G. GOLDSTEIN

Comes now Michael G. Goldstein, first being duly sworn, and state upon his oath:

1. My name is Michael G. Goldstein. I am a partner and vice chairman of the Tax and Estate Planning Department at the law firm of Husch & Eppenberger. I have personal knowledge of the facts in this affidavit.

2. I have been practicing law in the area of tax and estate planning for 22 years. I am a Fellow of the American College of Trust and Estate Counsel and the American College of Tax Counsel. Further, I have lectured nationally and have written several books and articles on tax and estate planning matters.

3. In October 1989, I was engaged by Corrigan Brothers, Inc. and its then related corporations ("Company") and the Corrigan family to provide tax and estate planning services to the Corrigan family and the Company.

4. The estate plan created for Thomas J. Corrigan, Sr. ("Decedent") is comprised of numerous trusts and sub-trusts which cause significant complexities to the plan. An outline of the estate plan, with its attendant trusts and sub-trusts is attached as Exhibit A. In my 22 years of practice, Decedent's estate plan is one of the most complicated that I have seen.

5. In order to give proper advice to both the Company and the Corrigan family with respect to tax and estate planning issues, it is necessary for me to understand Decedent's estate plan. These complexities must be understood in order to advise the Company, because almost all of the Company stock is held by the various trusts. These complexities must be understood in order to advise the Corrigan family, because a significant portion of their estates' value are included in the trusts.

6. I have reviewed the final documents which comprise the estate plan. Those documents do not, in my judgment, fully explain either Decedent's intent or the purpose or many of the aspects of this complex estate plan. There are many aspects of the plan for which I need collateral information in order to determine these matters. Such intent could be reflected in memoranda and notes contained in the files that were maintained by his legal counsel.

7. In reviewing the estate plan, I concluded that simplification of the plan, to the extent consistent with Decedent's wishes, would be beneficial not only to the Compa-

ny but to the Corrigan family members. A simplified structure could reduce administration cost, possible future litigation brought by heirs, and assist the family in operating the Company.

8. Prior to Decedent's death, from January 1985 through June 1985, Decedent's counsel, then Armstrong, Teasdale, Kramer & Vaughn ("ATKV") engaged in numerous activities with regard to various tax and estate planning matters. In order to understand what issues were raised by ATKV, I reviewed copies of ATKV's invoices, which are attached to this Affidavit as Exhibit B. In my review of the invoices, I found several entries indicating discussions with Decedent, and Decedent's desires with regard to the future of the Company. The bills also reflect the creation of numerous documents relevant to interpreting and understanding Decedent's estate plan. By way of example:

(a) On January 29, 1985, Mr. Corrigan had a conference at the Noonday Club with ATKV regarding the Company's class A voting stock.

(b) On February 1, 1985, Mr. Corrigan had a telephone conference with ATKV regarding "provisions of trust for A stock."

(c) On April 1, 1985, an ATKV memorandum was issued concerning proceeding with "project per conversation with Tom Corrigan on 3-29-85."

(d) On April 2, 1985, an ATKV memorandum regarding recapitalization was prepared.

(e) On April 5, 1985, a letter was sent "regarding decision of whether to recapitalize."

(f) On April 23, 1985, ATKV prepared for a meeting re recapitalization.

(g) On April 24, 1985, there was a meeting at ATKV's office regarding possible recapitalization of the Company.

(h) On April 25, 1985, ATKV prepared a memorandum regarding the April 24 meeting.

(i) On April 26, 1985, ATKV had a meeting regarding additional ideas for freezing value of Company.

(j) On April 29, 1985, an ATKV memorandum concerning additional points about recapitalization was prepared.

(k) On April 29, 1985, there was a conference at the Noonday Club with Decedent concerning benefits and disadvantages of recapitalizing the Company and other matters.

(l) On May 8, 1985, there was a meeting at University Club with Decedent and certain Corrigan family members concerning long range plans for the Company.

(m) On May 9, 1985, ATKV prepared notes on the May 8 meeting regarding long range plans for the Company.

(n) On May 9, 1985, there was an interoffice conference of ATKV's attorneys concerning problems with a plan for disposition of stock.

(o) On May 10, 1985, there was a review of ATKV memorandum and ATKV prepared a memorandum relating to matters to be considered.

(p) On May 17, 1985, there was an analysis of the results of a May 8 meeting and there was a review of ATKV memorandum of suggestions for next step in planning.

(q) On May 28, 1985, there was a conference concerning long range plans for stock ownership.

(r) On May 29, 1985, ATKV prepared notes of a meeting on May 28.

(s) On June 4, 1985, there was a conference regarding the recommendations of long range plans, meetings on long range plans, and ATKV notes concerning the two meetings.

(t) On June 5, 1985, ATKV prepared notes concerning points made on June 3 long range changes and ATKV prepared notes concerning a meeting along with a memorandum concerning possible call option in Company on class A stock.

(u) On June 6, 1985, there was a review of material concerning long range planning.

9. I have never seen the notes and memoranda referred to in the various billing invoices that reflect discussions with the Decedent. Furthermore, I was totally unaware of any advice rendered concerning call options and recapitalization of the Company.

10. It is imperative that I have access to all Corrigan files in order to determine whether there is information contained in those files that would adequately indicate the intent of the Decedent at the time of the meetings and telephone discussions concerning recapitalization of the Company and call options on its voting stock. Without such access to such files, it will be very difficult for me to provide adequate advice concerning tax and estate planning matters for the Company or the Corrigan family, consistent with Decedent's intent; or to devise some method of simplifying the estate plan consistent with Decedent's intent.

AFFIANT FURTHER SAYETH NOT.

/s/ Michael G. Goldstein
Michael G. Goldstein

STATE OF MISSOURI

COUNTY OF ST. LOUIS

On this 8th day of May, 1992, before me personally appeared Michael G. Goldstein, who being by me first duly sworn, did state that the statements made in this Affidavit are true to the best of his knowledge, information and belief.

Subscribed and sworn to me on the date and year last above written.

/s/ Linda I. Rands
Notary Public

My commission expires: