**E.S. (K.) D., Respondent,**

**v.**

**J.A.K., F.K. and J.K., Appellants.**

**WD 79567**

Missouri Court of Appeals, Western District.

OPINION FILED: February 21, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 2017

Application for Transfer Denied May 30, 2017

---

1. All citations are to RSMo 2000, as supplemented until January 1, 2017, unless otherwise noted.

Michael J. Svetlic, Kansas City, MO, for respondent.

Jonathan Sternberg, Kansas City, MO, for appellants.

Before Division Two: Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge and Alok Ahuja, Judge

Cynthia L. Martin, Judge

J.A.K. ("Father") appeals from a judgment denying Father's motion to modify the amount of child support he was required to pay to E.S.(K.)D. ("Mother"). F.K. ("Grandfather") and J.K. ("Grandmother") (collectively "Grandparents") appeal from the same judgment which also denied their petition seeking grandparent visitation. Finding no error, we affirm.

## Factual and Procedural History

Father and Mother were married in February 1999, and six children were born of the marriage, none of whom are emancipated. The marriage was dissolved on September 17, 2014 ("Dissolution Decree"). In the Dissolution Decree, the trial court found that "[c]riminal charges have been filed against [Father] involving the minor children," and that "[g]iven the nature of the charges against [Father], the parties agree that [Mother] shall have sole legal and sole physical custody of the minor children and ... [that Father] shall not have any contact with the minor children." The Dissolution Decree also found that the duly calculated presumed child support amount was $1,703.00, but that "the parties have requested and the Court finds that amount to be unjust and inappropriate," and that the "parties have requested and the court approves child support in the amount of $1,800.00 per month." The Dissolution Decree permitted Mother to relocate without complying with the provisions of section 452.377.11.[1]

Grandparents were permitted to intervene in the dissolution proceedings and filed a petition for grandparent visitation. The trial court entered a temporary order permitting limited and supervised grandparent visitation. On the day the Dissolution Decree was entered, however, Grandparents dismissed their petition for grandparent visitation with prejudice. The Dissolution Decree, and the parenting plan entered in connection therewith, did not afford Grandparents any visitation with the minor children.

At some point after the Dissolution Decree was entered, Mother relocated with the minor children to Florida. On February 10, 2015, Father filed a motion for contempt, and a motion to modify the Dissolution Decree and parenting plan to prevent relocation and to order return of the minor children to Missouri. Father's motion also alleged that changed financial circumstances warranted recalculation of his child support obligation. Mother responded, and among other things, filed a motion for contempt due to Father's failure to perform certain terms of the Dissolution Decree relating to the division of marital property and debts.

---

1. All statutory references are to RSMo 2000 as supplemented, except as herein noted.

In April 2015, Grandparents filed a motion to intervene in the proceedings. That motion was granted, and Grandparents thereafter filed a Petition for Third Party Custody, Or in the Alternative, for Grandparent Visitation ("Visitation Petition"). The Visitation Petition did not reference the Dissolution Decree or the existing parenting plan. The Visitation Petition did not request modification of the Dissolution Decree or the existing parenting plan.

The pending matters not otherwise resolved or abandoned proceeded to trial before the court on November 18, 2015. The parties stipulated that the only issues the trial court needed to determine at trial were: (i) Father's motion to modify child support; and (ii) Grandparent's request for grandparent visitation.[2] Father abandoned, therefore, his motion to modify the Dissolution Decree and parenting plan to prevent relocation and to require return of the minor children to Missouri. And Grandparent's abandoned their request for third-party custody of the minor children pursuant to section 452.375.5(5).

On December 21, 2015, the trial court entered its judgment ("Judgment") denying Father's motion to modify his child support obligation and denying Grandparent's request for grandparent visitation. The Judgment included factual findings and legal conclusions, although no party requested findings of fact and conclusions of law in the manner required by Rule 73.01(c). Father and Grandparents filed a motion to amend the Judgment pursuant to Rule 78.07(c), which was denied. This appeal follows.

## Standard of Review

"As in any court tried case, we review the trial court's judgment under the standard of review established in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Blue Ridge Bank and Trust Co. v. Trosen (Trosen II)*, 309 S.W.3d 812, 815 (Mo. App. W.D. 2010). "Accordingly, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* (quoting *McNabb v. Barrett*, 257 S.W.3d 166, 169 (Mo. App. W.D. 2008) (internal quotation omitted)). "We view the evidence, and permissible inferences therefrom, in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences." *Id.* (quoting *Brown v. Mickelson*, 220 S.W.3d 442, 447 (Mo. App. W.D. 2007) (internal quotation omitted)). "We defer to the trial court's factual findings, giving due regard to the trial court's opportunity to judge the credibility of the witnesses." *Id.* (quoting *Brown*, 220 S.W.3d at 447) (internal quotation omitted).

> This court "is primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result. Thus, the judgment will be affirmed if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient."

*Id.* at 815-16 (quoting *Blue Ridge Bank & Trust Co. v. Trosen (Trosen I)*, 221 S.W.3d

---

**2.** Mother's motion for contempt involving Father's noncompliance with provisions of the Dissolution Decree addressing the division of marital property and debts was resolved by stipulation, and the stipulated agreement was incorporated into the trial court's December 21, 2015 judgment addressing the matters tried on November 18, 2015. Father's motion for contempt involving Mother's relocation with the minor children was denied by the trial court's December 21, 2015 judgment. The contempt provisions in the trial court's December 21, 2015 judgment are irrelevant to this appeal and need not be further discussed.

451, 457 (Mo. App. W.D. 2007) (internal quotation and citation omitted)).

## Analysis of Grandparents' Points on Appeal

Grandparents raise three points on appeal. Point One argues that the trial court committed legal error by concluding that Grandfather abandoned his claim for grandparent visitation because he did not testify at trial. Point Two argues that the trial court committed legal error by concluding that Grandmother's petition for grandparent visitation was barred by res judicata because she earlier dismissed with prejudice the petition for grandparent visitation filed in the dissolution proceedings. Point Three argues that the trial court erred in alternatively denying Grandmother's petition for grandparent visitation on its merits because no evidence supported the trial court's factual conclusion that Father was a convicted felon. We address the points collectively.

With respect to Point One, the Judgment found that Grandfather "did not testify in support of his own motion" for grandparent visitation, and that Grandfather's "request for grandparent visitation is therefore abandoned and denied." Grandfather correctly notes that although he bore the burden to prove and persuade the trial court that he should be awarded grandparent visitation, there is no authority for the proposition that he was required to personally testify in order to sustain his burden.

■ However, "Rule 73.01(c) provides that 'all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.' " *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014) (quoting *In re*

*J.A.R.*, 426 S.W.3d 624, 626 (Mo. banc 2014)). A party seeking grandparent visitation must establish that the visitation "would be in the child's best interest," and "would [not] endanger the child's physical health or impair the child's emotional development." Section 452.402.2. The denial of Grandfather's visitation request can be fairly interpreted as the trial court's finding that Grandfather failed to sustain this burden, particularly in light of his failure to testify. It is well-settled that the failure of a party to testify on his or her own behalf, having knowledge of the facts and circumstances vitally affecting the issues at trial, raises a strong presumption that such testimony would have been unfavorable to the party. *In re S.M.B., Jr.*, 254 S.W.3d 214, 220–21 (Mo. App. S.D. 2008); *see also Bair v. Faust*, 408 S.W.3d 98, 103 (Mo. banc 2013) (the adverse inference rule "allows for 'an unfavorable inference to be drawn against a party, knowledgeable of the facts of the controversy, who fails to testify' ") (quoting *Pasternak v. Mashak*, 428 S.W.2d 565, 568 (Mo. 1967)). Here, Mother presented evidence that Grandfather had sexually molested his own daughter, Father's sister, when daughter was younger, and that Grandmother was contemporaneously aware of daughter's allegations. Grandfather's silence in the face of such serious allegations was permissibly relied on by the trial court to draw unfavorable inferences against Grandfather that supported the denial of his request for grandparent visitation.

■ Even were we to conclude, which we do not, that the trial court erroneously deemed Grandfather's petition for grandparent visitation abandoned based solely on his failure to testify, Grandfather would not be entitled to relief.[3] We are required

---

**3.** Grandfather requests that we remand his request for visitation to the trial court for

consideration on the merits.

to affirm the trial court's Judgment "if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Trosen II*, 309 S.W.3d at 815-16 (quoting *Trosen I*, 221 S.W.3d at 457). As we discuss in connection with Point Two, Grandparents did not seek grandparent visitation in a manner authorized by statute, a conclusion the trial court expressly reached with respect to Grandmother, and that is equally applicable to Grandfather.

■ In Point Two, Grandparents argue that it was error to find that Grandmother's petition for grandparent visitation was barred by res judicata. Grandparents' claim presumes a conclusion the Judgment did not reach.

The Judgment found that Grandparents dismissed an earlier filed petition for grandparent visitation with prejudice just prior to entry of the Dissolution Decree. The Judgment found that Grandmother, "having previously dismissed her request for grandparent visitation, with prejudice, testified that she [did so] so that [Father] would obtain a better plea bargain agreement. She believes her son, [Father], did not do what he pled guilty to." And the Judgment found that Grandparents filed "another" petition for grandparent visitation on May 6, 2015 after Father filed his motions in this case. The Judgment did not find, however, that Grandparents' second filed petition for grandparent visitation was barred by the doctrine of res judicata based on dismissal of the earlier filed petition with prejudice. In fact, the Judgment makes no mention of the doctrine of res judicata.

Instead, in denying Grandmother's request for visitation, the Judgment found that Grandmother's "request [for grandparent visitation] is statutorily provided and ... she is barred from seeking the relief she has requested." In other words, the Judgment found that the statute authorizing grandparent visitation did not authorize an award of visitation to Grandmother. Grandparents' Brief, which alleges at page 28 that "the trial court found Grandmother was 'barred from seeking the relief she has requested' in her petition for grandparent visitation because she 'previously dismissed her request for grandparent visitation' filed in the parties' original dissolution 'without prejudice,'" conflates independent and unconnected findings in the Judgment. In the process, Grandparents' Brief misrepresents the holding of the Judgment, and Point Two on appeal is without merit as a result.

In fact, Grandparents' second point on appeal does not challenge the trial court's conclusion that their [4] request for visitation was barred by statute. Even had Grandparents preserved this issue for our review, we would not find that the trial court committed legal error in so concluding.

Grandparent visitation is addressed in section 452.402. Section 452.402.1 provides:

The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when:

(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely

---

4. Though the trial court's finding referred only to Grandmother, it is equally applicable to Grandfather, and affords an alternative basis for denying Grandfather's request for visitation rights. The trial court's "judgment will be affirmed if cognizable under any theory,

regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Blue Ridge Bank and Trust Co. v. Trosen (Trosen II)*, 309 S.W.3d 812, 815-16 (Mo. App. W.D. 2010) (quotation omitted).

on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when visitation has been denied to them; or

(2) One parent of the child is deceased and the surviving parent denies reasonable visitation for a parent of the deceased parent of the child; or

(3) The child has resided in the grandparent's home for at least six months within the twenty-four month period immediately preceding the filing of the petition; and

(4) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days. However, if the natural parents are legally married to each other and are living together with the child, a grandparent may not file for visitation pursuant to this subdivision.

Subsections 452.402.1(2) and (3) have no application to this case. And Grandparents do not rely on subsection 452.402.1(4) to claim a right to grandparent visitation.[5] Instead, Grandparents urge in their Brief that they had "the right to file a motion to modify the original decree of dissolution to seek visitation rights," pursuant to section 452.402.1(1). [Appellant's Brief, p. 31]

Subsection 452.402.1(1) authorizes two procedural avenues for seeking grandparent visitation: (i) through intervention in a pending dissolution action; or (ii) by filing a motion to modify a previously entered dissolution decree. The first avenue is no longer available to Grandparents. Though Grandparents intervened in Father and Mother's pending dissolution action to seek grandparent visitation, they dismissed that motion with prejudice, resulting in a Dissolution Decree and approved parenting plan that contained custody and visitation provisions establishing Father's and Mother's rights, and that contained no provision for grandparent contact or visitation.

The second avenue for seeking grandparent visitation requires the filing of a motion to modify a previously entered dissolution decree. The rationale for this requirement is plain. Once a dissolution decree is entered, parental custodial and parenting time rights have been conclusively declared. A grandparent's subsequent effort to secure visitation rights will, if successful, "necessarily impact the parents' visitation and parenting time with their child." *Tompkins v. Ford*, 135 S.W.3d 508, 511 (Mo. App. W.D. 2004).

> [A] trial court's judgment [awarding grandparent visitation] will almost certainly contain provisions that conflict or are otherwise inconsistent with the dissolution judgment, placing parents in the difficult position of having to choose which judgment to comply with and which to disobey.

*Id.* Given these obvious and practical concerns, and in keeping with the plain language of section 452.402.1(1):

> [W]hen there has been a prior dissolution judgment that includes provisions

---

**5.** Even had Grandparents relied on subsection 452.402.1(4), they would be bound by subsection 452.402.1(1). Though subsection 452.402.1(4) provides for grandparent visitation if a grandparent is "unreasonably denied visitation ... for a period exceeding ninety days," the subsection is silent with respect to "the procedural mechanism by which a grandparent may raise his or her request for visitation" based on this subsection. *Tompkins v. Ford*, 135 S.W.3d 508, 510 (Mo. App. W.D. 2004). In *Tompkins*, we held that even if a petition for grandparent visitation is premised on subsection 452.402.1(4), the request necessarily falls (and must abide by) subsection 452.402.1(1) if there is already in place at the time of the grandparent's petition "an existing judgment dissolving the marriage of the child's parents" containing "custody and visitation provisions allocating parenting time and responsibilities between the parents." *Id.* at 510-11.

dealing with parenting time with the child, a grandparent seeking visitation ... *must file their request as a motion to modify the dissolution judgment*, as provided within Section 452.402.1(1). *The grandparent may not raise the issue through an independent action seeking visitation.*

*Id.* (emphasis added). "If the grandparent's action proceeds as an independent action, it becomes difficult (if not impossible) to harmonize the resulting judgment with the prior one." *Id.* "The trial court, in that context, has no jurisdiction to modify the dissolution decree to reflect an award of grandparent visitation." *Id.*

Here, although Grandparents allege in their Brief that the Visitation Petition constituted a motion to modify the Dissolution Decree and pre-existing parenting plan, the Visitation Petition is not styled as a motion to modify, makes no reference to the Dissolution Decree or parenting plan, and does not request that either be modified. Instead, the Visitation Petition is akin to an independent petition seeking visitation rights.[6]

In fact, the procedural posture of this case is materially similar to that in *Tompkins*, where this court differentiated between an independent petition seeking grandparent visitation and a motion to modify an existing dissolution decree. In *Tompkins*, a grandmother's motion to intervene in the parent's dissolution action for the purpose of seeking grandparent visitation was denied. 135 S.W.3d at 509. Sometime after the parent's dissolution decree was final, the grandmother filed a petition for grandparent visitation, alleging she had been unreasonably denied visitation with her grandchild. *Id.* The grandmother's petition was deemed to be an unauthorized independent petition seeking visitation, and not the motion to modify an existing dissolution decree required by section 452.402.1(1). *Id.* at 510-11. Here, Grandparents similarly filed an independent petition seeking visitation rights, and not a motion to modify the Dissolution Decree. It was thus not error for the trial court to conclude that Grandparents' ability to seek visitation was controlled by statute, and that section 452.402.1(1) barred an award of grandparent visitation.

■ Even were we to liberally construe the Visitation Petition as a motion to modify the Dissolution Decree,[7] Grandparents would not be entitled to relief. Section 452.402.2 provides that:

The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endan-

---

**6.** There is little decisional law guidance about the procedure grandparents should follow to file a motion to modify pursuant to section 452.402.1(1). However, it is reasonable to assume that a grandparent's motion to modify should follow and would be bound by the procedures applicable to a parent's motion to modify, including section 452.400.2(1) (addressing the trial court's authority to modify a prior decree addressing visitation), and by section 452.310.8 (addressing the requirement of timely filed parenting plans in any proceeding seeking to modify visitation).

**7.** The Visitation Petition alleged that the trial court had jurisdiction to entertain the request for grandparent visitation because "there is a modification action currently pending," an allegation that refers, no doubt to Father's then pending motion to modify the Dissolution Decree to prevent relocation and to require the minor children to be returned to the State of Missouri. However, by the time of trial, Father's motion to modify the Dissolution Decree insofar as it affected either custody or visitation had been abandoned, and all that remained was Father's request to modify his child support obligation. There was no motion to modify the Dissolution Decree with respect to custody or visitation pending at the time of trial, and Grandparents' pleading did not separately seek to modify the Dissolution Decree as required by section 452.402.1(1).

ger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child.

The trial court found "that it is not in the children's best interest to have contact with [Grandmother] as she has chosen her convicted felon son, [Father], over the grandchildren." In Point Three, Grandparents challenge the trial court's best interest finding, arguing that it was error to characterize Father as a felon. We agree that the record establishes only that Father was convicted of a misdemeanor, following a guilty plea wherein his charge was reduced from a felony. This technical discrepancy is immaterial, however, to the trial court's best interest finding. The trial court's concern was not with whether Father was a felon, but was instead with the fact that Grandmother chosen her son over her grandchildren, even though her son's criminal conviction involved the grandchildren. This conclusion is bolstered by the trial court's unchallenged factual findings that Grandparent's earlier filed petition seeking visitation rights had been voluntarily dismissed with prejudice so that Father "would obtain a better plea bargain agreement," and that Grandmother "believes her son, [Father], did not do what he pled guilty to." Given that the criminal charges Father faced, and as to which he pled guilty, involved conduct with the minor children sufficient to deprive Father of both custody and visitation in the Dissolution Decree, it was certainly relevant in assessing best interests that Grandmother believed Father, and not the children, notwithstanding Father's guilty plea.

Beyond criticizing the trial court's mistaken (and immaterial) characterization of Father as a felon, Grandparents do not otherwise challenge the trial court's best interest finding. Though the trial court's best interest finding only mentions Grand-

mother, it is equally binding on Grandfather. Grandparents dismissed their first petition seeking grandparent visitation for the reason stated by Grandmother. The second filed Visitation Petition sought collective visitation for Grandparents, consistent with the fact that Grandparents reside together. A best interest finding regarding either grandparent impacts the Visitation Petition in the same manner for both.

Points One, Two, and Three on appeal are denied.

### Analysis of Father's Points on Appeal

Father raises two points on appeal, both of which challenge the trial court's denial of his motion to modify child support. Point Four argues that the trial court committed legal error by imputing gross annual income to Father based on what he could earn in Kansas City, when Father lived in Springfield and did not move to Springfield to evade parental responsibilities. Point Five argues that the trial court erroneously found that Father failed to demonstrate a twenty percent change in his presumed child support obligation necessary to establish a prima facie case favoring modification because the twenty percent threshold does not apply where a child support obligation is set by agreement. Father contends that the correct standard is inability to pay, which he claims he demonstrated. We address the points collectively, though in reverse order.

■ The Dissolution Decree ordered Father to pay Mother $1,800.00 per month in child support, and found in doing so that the "parties requested and the Court finds" the presumed amount of child support as calculated pursuant to Form 14 "to be unjust and inappropriate." The presumed amount of child support at the time of the Dissolution Decree had been

$1,703.00 per month. In the Judgment denying Father's motion to modify child support, the trial court found that at the time of Dissolution Decree, Mother's income was zero, and Father's income was $4,000.00 per month.

A trial court may modify a child support decree "only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370; *Ndiaye v. Seye*, 489 S.W.3d 887, 899 (Mo. App. W.D. 2016). The party seeking modification of child support bears the burden of proving a substantial and continuing change in circumstances sufficient to modify child support. *Kohl v. Kohl*, 397 S.W.3d 510, 514 (Mo. App. W.D. 2013).

"Under Section 452.370, the party seeking modification makes a prima facie showing of a change in circumstance where the application of the child support guidelines results in a change from the existing amount by twenty percent or more." *Ndiaye*, 489 S.W.3d at 899 (quoting *Breuer v. Breuer*, 449 S.W.3d 409, 413-14 (Mo. App. E.D. 2014)). In other words, where the twenty percent modification threshold is established, a change in circumstances so substantial and continuing as to make the present child support award unreasonable is presumed. Section 452.370. But, a prima facie showing of a change in circumstance based on a twenty percent change from the existing amount is available only "if the existing amount was based upon the presumed amount pursuant to the child support guidelines." Section 452.370; *Kohl*, 397 S.W.3d at 514.

Here, the trial court found that Father did not make a prima facie showing of a change in circumstances, because its "Form 14 calculation results in a correct child support amount of $1,387.00 which does not result in a twenty ... percent change." Father's Point Five on appeal

correctly points out that the twenty percent modification threshold did not apply to his motion to modify child support, as the original child support amount he was ordered to pay was not the presumed amount pursuant to the child support guidelines. However, Father's correct observation does not warrant reversal in this case. *See Trosen II*, 309 S.W.3d at 815-16.

First, even assuming Father's original child support obligation had been $1,703.00, the presumed amount at the time of the Dissolution Decree, the newly calculated presumed child support amount, $1,387.00, would not have represented at least a twenty percent change. In other words, even measured against the original presumed amount, Father could not have benefitted from the twenty percent threshold required to establish a prima facie showing of changed circumstances sufficient to warrant modification. Second, and more to the point, the trial court's twenty percent threshold finding meant simply that Father had not established a ***prima facie*** showing of a change in circumstances so substantial and continuing as to make his child support obligation unreasonable. The trial court did not deny Father's motion to modify child support on this basis. It simply found that Father's motion could not be granted on this basis. The trial court's discussion of the twenty percent modification threshold is harmless error, at best.

Where the twenty percent modification threshold does not apply to afford a moving party the benefit of a prima facie change in circumstances, "a moving party must submit other evidence showing a substantial and continuing change of circumstances." *Talley v. Bulen*, 193 S.W.3d 881, 882 (Mo. App. S.D. 2006); *see also Brown v. Brown*, 19 S.W.3d 717, 724 (Mo. App. W.D. 2000) (stating that the required showing of a substantial and con-

tinuing change "may be established in other ways"). Recognizing this point, Father argues that he satisfied his burden to show a substantial and continuing change of circumstances by establishing an inability to pay the original child support amount. We disagree.

■ Father argues that he is unable to pay the original child support amount because his income has decreased to $3,833.00 per month. The trial court found (and Father does not challenge) that Father's income had been $4,000.00 per month at the time of the Dissolution Decree. Thus, assuming Father's current income is as he claims, his income has decreased by only $167.00 per month since the Dissolution Decree. This is not a substantial and continuing change rendering the original child support award unreasonable. Though Father argues his current expenses leave him with little disposable income at the end of each month, Father does not argue that his expenses have changed materially from the time of the Dissolution Decree.[8] Father has not sustained his burden to establish a change of circumstances so substantial and continuing as to render his child support obligation unreasonable. *Brown*, 19 S.W.3d at 725 (holding that moving party "ha[d] not met his burden of showing changed circumstances so substantial and continuing as to make the terms unreasonable").

We recognize that the Judgment finds that Mother now has a monthly income of $3,916.00, where her income had been zero at the time of the Dissolution Decree. However, Father does not argue on appeal that Mother's increase in income constitutes a substantial and continuing change in circumstances warranting modification of his child support obligation, and instead relies solely on his argued inability to pay the original child support amount. Thus, we do not address the significance, if any, of Mother's increase in income, other than to note that Father has not challenged the trial court's findings that Mother is now paying for the minor children's health insurance, and bears one hundred percent of the parenting obligation given Father's criminal conduct.

Because Father has not sustained his burden to establish a change of circumstances so substantial and continuing as to render his child support obligation unreasonable, Point Four on appeal need not be addressed. In Point Four, Father complains that in calculating a new presumed child support obligation, the trial court erroneously imputed income to him based on wage rates in Kansas City, and not Springfield.[9] However, the trial court had no need to calculate a presumed child support obligation. As Father correctly observed, he was not eligible to take advantage of the twenty percent modification threshold addressed in section 452.370, rendering calculation of a new presumed child support obligation for that purpose unnecessary. Thus, unless Father otherwise established a change in circumstances so substantial and continuing as to make

---

**8.** Nor does Father provide the Form 14 used at the time of the Dissolution Decree. "The record on appeal must contain all of the proceedings necessary to a determination of the questions presented for decision, and matters omitted from the record will not be presumed to be favorable to the appellant." *Bruce v. State*, 998 S.W.2d 91, 93 n.1 (Mo. App. W.D. 1999) (internal quotation and citation omitted). Rather, "[a]n omitted exhibit ... may be taken as supporting the judgment of the trial court." *City of Lee's Summit v. Collins*, 615 S.W.2d 592, 595 (Mo. App. W.D. 1981).

**9.** The trial court imputed income to Father of $5,417.00 per month, an amount that was commensurate to what Father had been making just before moving from Kansas City to Springfield.

the original child support award unreasonable, there was no need for the trial court to calculate a new presumed child support obligation. *See* Section 452.370.2 ("When the party seeking modification has met the burden of proof set forth in [section 452.370.1], the child support shall be determined in conformity with criteria set forth in section 452.340 and applicable supreme court rules."). We have already explained that Father's claimed inability to pay his existing child support obligation was insufficient to sustain this burden. Because Father did not establish a change in circumstances so substantial and continuing as to render his child support obligation unreasonable, the trial court's calculation of a new presumed child support amount and concurrent imputation of additional monthly income to Father was an unnecessary exercise. Error, if any, in imputing income to Father as a part of this unnecessary exercise was harmless, at best.[10]

Points Four and Five on appeal are denied.

## Conclusion

We affirm the trial court's Judgment denying Father's motion to modify child support and denying Grandparent's Visitation Petition.

All concur

---

10. We are not suggesting that it was error to impute income to Father based on his earning capacity in Kansas City. Rather, we simply need not address the issue.