SPIRTAS COMPANY, Respondent,

v.

DIVISION OF DESIGN AND CONSTRUCTION, Appellant.

No. WD 61494.

Missouri Court of Appeals, Western District.

April 13, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mark E. Long, Assistant Attorney General, Jefferson City, for appellant.

Steven M. Cockriel, St. Louis, for respondent.

RONALD R. HOLLIGER, Judge.

Missouri Division of Design & Construction ("Division") appeals from a judgment, after jury verdict, in favor of Spirtas Company ("Spirtas") on its claims that the Division breached a demolition contract for a state owned building and violated the Prompt Pay Act, Section 34.057, RSMo 1994. Spirtas contended that the Division breached the contract by hiring a third party to remove some of the asbestos from the building because Spirtas had the exclusive right to do the work under the contract. It, therefore, sought lost profits for that portion of the work that was awarded to another contractor by a change order. The court awarded partial summary judgment in favor of Spirtas on the liability issue for the breach of contact claim. Damages for that claim and liability and damages under the Prompt Pay Act count were submitted to a jury. The jury awarded Spirtas $360,898.52 on the breach of contract claim and penalties under the Prompt Pay Act.

The Division contends on appeal that the trial court erred in granting partial summary judgment on liability, committed trial error on various grounds, and erred in the submission of the Prompt Pay Act claim. We agree that the trial court erred in granting partial summary judgment. The judgment is reversed and remanded.

The contract for demolition of the Eastern Region Mental Health Facility was for a price of $2,030,645, "subject to additions and deductions as provided herein." The contract in addition to general demolition work included abatement of various asbestos-containing materials that had been identified in various portions of the building. Because the parties were unable to determine the exact quantities and loca-

tions of all asbestos containing materials, the contract contained estimates as to the quantity and location of those materials. Specified quantities of various materials in various parts of the building were included in the base bid and contract amount.

The parties agreed that the contract amount would be adjusted upwards or downwards as exact quantities were discovered and removed. The contract provided for unit prices for these adjustments. Because the type and location of asbestos containing materials varied widely, the contract provided various unit prices for each material and location. In fact, the contract included at least seven different unit prices for removing asbestos for various size pipes and joints. The contract documents estimated that 16,000 square feet of asbestos containing duct covering would need to be removed from the building's mechanical room. The contract further stated that more or less duct covering might be present and that "change orders shall be issued for the increased or decreased amount." The contract set a unit price of $4.75 per square foot of asbestos-containing duct covering removed or found that was not included in the base bid.

During the demolition, it was discovered that ductwork above the ceilings elsewhere in the building was also encased in asbestos-containing coverings. The parties estimated this additional covering to be approximately 100,000 square feet. The Division took the position that the composition of the duct covering in the ceilings differed from the covering used in the mechanical room and would require a different means of removal. The Division asked Spirtas to provide a separate bid for the abatement of the additional asbestos. The Division did not accept that bid. The Division then opened the bidding process to other contractors. Spirtas submitted a

second bid, which was also rejected. The Division ultimately accepted the bid provided by Environmental Abatement Services ("EAS"). EAS removed 168,000 square feet of asbestos-containing duct covering under their contract with the Division.

Work was substantially completed in April 1999. In March 2000, Spirtas submitted a claim for lost profits against the Division, claiming that it was deprived of lost profits by the Division's decision to have EAS perform the additional abatement work. It sought damages in the amount of $360,898.52 (the net result of the 168,000 square feet of additional duct covering multiplied by the unit price of $4.75 per square foot, less $437,101.48 for Spirtas' estimated costs of removal). The claim was rejected, leading to the present suit by Spirtas against the Division, in which it sought lost profits based upon a breach of contract theory, together with penalties under the Prompt Pay Act, Section 34.057, RSMo 1994.

While the suit was pending, Spirtas brought a motion for partial[1] summary judgment, arguing that it was entitled to a change order reflecting the additional asbestos removal work. It also argued that the contract required the Division to compensate Spirtas for that work at the previously agreed unit price of $4.75 per square foot. The trial court granted Spirtas' motion in part. In a brief order, the trial court granted summary judgment to Spirtas "as to liability only." With regard to the issue of damages, the partial summary judgment stated that damages were "to be determined at [a] later date based upon further evidence."

The remaining issues proceeded to trial. At the conclusion of trial, the Division

---

1. The motion did not address Spirtas' claim for penalties under the Prompt Pay Act.

moved for directed verdict on the issue of damages and liability. It also moved for the dismissal of the case for lack of standing, arguing that the suit was actually brought by Environmental Control and Abatement ("ECA"), one of Spirtas' subcontractors, and not Spirtas itself. The trial court denied these motions. The jury awarded Spirtas $360,989.52 in lost profits and found that the Division had violated the Prompt Pay Act. Based on the latter finding, the trial court awarded interest at the rate of 1.5% per month from April 2000 and attorney's fees in the amount of $32,188.75.

### Discussion

The Division appeals, raising six claims of error. First, it contends that the evidence did not support the amount of damages awarded by the jury. Second, the Division claims that the trial court erred in granting partial summary judgment in favor of Spirtas on the issue of liability, as Spirtas was not entitled to judgment on that issue as a matter of law. Third, the Division argues that the trial court committed error in denying its motion for directed verdict and in refusing its non-MAI instruction limiting the amount of damages. Fourth, the Division argues that the trial court erred by refusing to dismiss Spirtas' suit on standing grounds. Fifth, the Division contends that the trial court committed reversible error by failing to sustain its objection to closing argument by Spirtas that misstated the law. Sixth, the Division argues that the trial court erred by imposing penalties under the Prompt Pay Act, Section 34.057, RSMo, because Spirtas failed to establish that its claim met the requirements of that statute.

Because we find that the trial court erred in granting summary judgment to Spirtas on the issue of liability, we sustain the Division's second point on appeal. In that point, the Division complains that the trial court erred in granting summary judgment on the issue of liability for Spirtas' breach of contract claim leaving only the issue of damages for the jury. We agree, and reverse and remand for further proceedings. Preliminarily, however, we must consider, out of order, the Division's fourth point on appeal, which contends that suit should have been dismissed on standing grounds.

### The Trial Court Did Not Err in Refusing to Dismiss the Suit on Standing Grounds

■ In its fourth point on appeal, the Division argues that the trial court should have dismissed the suit for lack of standing. It contends that the suit was brought not by Spirtas, but instead by its subcontractor, ECA. The Division points out that ECA did not have standing to sue the Division and was barred from bringing suit by sovereign immunity, as it was not a party to the contract with the Division. The Division also contends that Spirtas could not assign any rights to ECA. Spirtas replies that the trial court's decision was correct, as Spirtas, and not ECA, was the plaintiff in the action.

The Division relies upon two principal facts in support of its argument. First, the Division notes that Spirtas did not have a corporate representative at trial (either for testimonial purposes or merely to be present during trial). Second, it directs the Court's attention to the testimony of witnesses from ECA, which discussed damages in terms of the lost profits incurred by ECA, not those incurred by Spirtas. The Division's argument, however, is, nevertheless, at odds with the pleadings in this case, which name Spirtas as the plaintiff in the action. Further, Spirtas *did* appear at trial, through its counsel. The Division points us to no rule or case

law which sets out a requirement that a plaintiff (or any other party) must personally attend trial when they are represented by counsel, absent a subpoena or similar compulsion requiring the party's attendance at trial.

Point denied.

## Standard of Review

■■ Appellate review of a grant of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Co.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We do not defer to the trial court's order granting summary judgment because the propriety of such grant is purely a question of law. *Id.* We view the record in the light most favorable to the Division as the non-movant. The facts supporting the motion are deemed true unless contradicted by the non-movant in response to the motion. The non-movant, however, is accorded all reasonable inferences from the record. *Id.* Even if the facts are not in dispute, the movant is not entitled to summary judgment unless the facts establish that the movant is entitled to judgment as a matter of law. *Hornbeck v. All Am. Indoor Sports, Inc.*, 898 S.W.2d 717, 720 (Mo.App.1995).

## A Dispute of Material Fact and Ambiguity in the Contract Precluded the Grant of Partial Summary Judgment

In its second point on appeal, the Division contends that the trial court's partial grant of summary judgment in favor of Spirtas on the issue of liability was improper. In order to reach such a conclusion, the trial court was required to find, as a matter of law, that Spirtas was entitled under the contract to remove the additional asbestos for the unit price of $4.75 per square foot. The Division argues that such a finding was erroneous because the

contract language required Spirtas to comply with the change order provisions of the contract by negotiating an agreed price for the removal of the additional asbestos and obtaining a change order from the Division. Spirtas argues, in response, that the trial court properly construed the contract in determining that it was entitled to perform the removal of the additional asbestos-containing duct covering at the unit price contained within the contract.

■■ Determining the intention of the parties and giving effect to that intention is the prime principle of contract interpretation. *Butler v. Mitchell–Hugeback, Inc.* 895 S.W.2d 15, 21 (Mo. banc 1995). The contract is read as a whole to determine the parties' intent. *City of Harrisonville v. Pub. Water Supply Dist. No. 9 of Cass County*, 49 S.W.3d 225, 231 (Mo.App.2001). All terms are given their plain, ordinary, and usual meanings, and terms should be construed to avoid rendering other terms meaningless. *Id.* Intent is not to be determined merely by looking at isolated provisions not considered in the context of the entire agreement. *See Cent. City Ltd. P'ship v. United Postal Sav. Ass'n*, 903 S.W.2d 179, 182–83 (Mo.App.1995).

■■ Where a contract dispute is based on the construction of a contract, rather than a factual dispute as to what was agreed upon, the court must construe the contract. If it is clear and unambiguous as a matter of law, this construction is limited to the "four corners" of the instrument and parol evidence as to its meaning cannot be utilized. *Eisenberg v. Redd*, 38 S.W.3d 409, 411 (Mo. banc 2001). Whether a contract is ambiguous is an issue of law. *J.H. Berra Constr. Co., Inc. v. Mo. Highway & Transp. Com'n*, 14 S.W.3d 276, 279 (Mo.App.2000). A contract is not ambiguous merely because the parties disagree as to its construction. It is ambiguous only if its meaning is subject to fair

and honest differences. *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003). Where an ambiguity exists and the court must utilize parol evidence to determine the parties' intent, a fact issue exists that generally precludes summary judgment. *Tuttle v. Muenks,* 21 S.W.3d 6, 9 (Mo.App.2000).

The contract in question, here, consisted of a four page "contract form," thirty-seven pages of general conditions, six pages of special conditions and seventeen pages of asbestos abatement specifications.[2] Spirtas, in support of its argument that it was entitled to remove any additional asbestos-containing materials within the building, relied upon two provisions in the asbestos specifications. Specification 3.12.B provided (italics added):

Because this abatement is being done to prepare the building for demolition, the *contractor will be responsible to remove all asbestos from the building.* The inspector was not able to perform an extensive survey in the building because it was occupied and much of the piping is located in inaccessible pipe chases and above ceilings (both plaster and suspended type).

Spirtas also points to Specification 1.1.C, "Scope of Work," which required Spirtas to:

Remove all asbestos containing material from the Kohler Building including but not limited to pipe insulation, mudded fittings and joints, floor tile and mastic, bare and under carpet, duct covering, roof-top transite cooling tower etc.

These provisions, Spirtas contends, imposed upon it the legal obligation and, concomitantly, the legal right to remove all additional asbestos duct covering. As the contract further specified that unit pricing would apply "for changing specified quantities of work from those indicated contained in the contract form," Spirtas argues that it was entitled to remove the additional duct covering at the unit price of $4.75 per square foot specified in Article 4 of the contract.

In support of its position on appeal, the Division points to other parts of the contract which it contends the trial court ignored or misconstrued in determining whether Spirtas' alleged construction of the contract was correct as a matter of law. The Division argues that the trial court failed to apply provisions of the contract dealing generally with changes in conditions, change orders, and asbestos removal, specifically. Article 2.G of the contract's General Conditions requires notifying the Division if the contractor encounters conditions materially differing from those in the contract documents. Further, it states, "If conditions do materially differ and cause an increase or decrease in contract cost or time required for completion of any portion of the work, a change order will be initiated as outlined in Article 26 of these General Conditions."

Spirtas is somewhat equivocal as to whether a change order was required to account for the additional asbestos-containing duct covering found here. Spirtas argues, in the alternative, either that it needed no change order because the additional work was within the scope of the work it was obligated and entitled to perform under the contract or that the Division was legally obligated to issue Spirtas a change order because the removal of the additional duct covering was within the scope of the work defined within the contract.

In support of its first argument, Spirtas claims that the change order provisions do

**2.** All other drawings and specifications were also incorporated into the contract and numerous other documents, but those items have no application here.

not apply to its claim because the contract anticipated additional asbestos-containing materials would be present in the building, and that was why the parties specified a unit price in the contract (apparently, as opposed to a flat fee) for the asbestos removal. We agree with Spirtas that the parties' contract contemplated the possibility of additional asbestos-containing materials being discovered, but the conclusion that the unit price schedule made change orders unnecessary for their removal is contradicted by the contract itself. Article 4 of the Contract Form states (italics added):

> Only a single unit price shall be given and it shall apply for either MORE or LESS work than that shown on the drawings and called for in the specifications or included in the base bid. *In the event of more or less units than so indicated or included, change orders shall be issued for the decreased or increased amount.*

Spirtas' resistance to the applicability of the change order provisions in Article 26 is understandable, though, because those provisions undermine its argument that the parties agreed in the contact that Spirtas had the right as a matter of law to do any additional removal of asbestos-containing duct covering at the rate of $4.75 per square feet. Article 26 states, in applicable part (italics added):

> The amount of any adjustment in this contract price for authorized changes or the use of contract allowances *shall be agreed upon* before such changes or authorizations become effective and shall be determined, *through submission of a request prepared by the designer* as follows.

The change order provisions require the parties to agree on a price. Article 26.B sets forth three methods for determining the agreed-upon price: (1) by an acceptable unit price or lump sum proposal from the contractor; (2) by a cost-plus-fixed-fee basis, and (3) by unit prices contained in the original contract. Only one of the three pricing options involves the originally negotiated unit price in the contract. Spirtas takes the position that, where the contract has specified a unit price for the performance of a particular type of work, then that unit price prevails, and that the other two pricing options are not available.

While Spirtas' reading of the contract language is reasonable with regard to minor changes in the amount of work to be performed, we disagree that it is applicable in circumstances that materially differ from those contemplated in the contract. When a material change in circumstances is discovered, the contract provides that the Division will issue a request for proposal to the contractor concerning the material changes in the work, and that a change order will be issued after the parties have come to an agreement as to the price by choosing one of the three options pricing outlined in Article 26.B.

That interpretation of the contract is buttressed by the provision in Article 26.D that "in the event that none of the foregoing [pricing] methods are agreed upon, the Director may order work performed by force account or accounts." In other words, the Director could order the contractor to perform the work with compensation being based upon labor and material cost, plus overhead and profit. While the parties were unable to agree to a price, the force account option was not available to the Division, however, as the work involved asbestos removal. Article 11.N.(b) of the contract states, "The contractor shall not be required pursuant to Article 26 to perform, without the contractor's consent, any work related to hazardous materials." Thus, Spirtas could not be compelled to do that work unless it con-

sented to do so by reaching a separate agreement with regard to the pricing of that work. The contract does not address the situation where, as here, the parties are unable to reach an agreement with regard to pricing of removal of asbestos (or any other hazardous substance).

To review, then, while the contract provides that Spirtas is obligated to conduct all removal of asbestos-containing materials in the course of its demolition project, the contract also contains a provision that, when materially differing circumstances are discovered, requires the parties to reach a separate agreement regarding the price to be paid by the Division for work. The contract is silent regarding circumstances where a materially different amount of asbestos-containing materials has been discovered in the course of Spirtas' work and the parties have been unable to agree upon a price for the removal of the additional materials.

The Division contends that it was free in such circumstances to seek bids from other contractors to perform the work. We do not agree with the Division that its suggested interpretation of the contract is the sole reasonable construction. In our view, the contract language is unclear whether Spirtas' obligation to perform all asbestos removal work under the contract prevails (with Spirtas' compensation being set by one of the three methods provided in Article 26.B) or whether the disagreement between the parties with regard to pricing permitted the Division to solicit and accept bids from other contractors to perform the work.

Thus, construction of the contract presented two issues for resolution. The first issue was whether the discovery of the additional asbestos-containing duct covering constituted a material change of circumstances that required the parties to come to a separate agreement as to the pricing for the removal of that duct covering.[3] This is a fact question that was in genuine dispute between the parties. Therefore, the grant of summary judgment was inappropriate on that basis. *See Horne v. Ebert,* 108 S.W.3d 142, 147 (Mo. App.2003).

However, assuming, for purposes of discussion, the additional asbestos-containing materials did constitute a material change, we are faced with the contractual ambiguity. As to this question, the terms of the contract are conflicting, exhibiting a latent ambiguity in the contract.[4] Spirtas extends a reasonable argument for a construction of the contract based on purely a unit price for the additional duct covering. The Division advances a reasonable argument that while Spirtas was contractually entitled to do the work, the unit prices would not apply if materially different quantities of asbestos-containing duct covering were found, and that it could solicit bids from other contractors in the event that it was not able to reach an agreement with Spirtas as to pricing for the asbestos removal.

Where there are two reasonable constructions of a contract, it is ambiguous. *See Tuttle v. Muenks,* 21 S.W.3d

---

**3.** The materiality question, here, is posed in terms of the quantity of asbestos-containing materials discovered. There is some suggestion in the briefs that the asbestos-containing materials found outside the mechanical room, although duct covering, was of a different type, in a different location, and could be removed by a different, cheaper method.

This was not fully developed on the summary judgment record, and we express no opinion as to whether this is an issue to be resolved by the jury.

**4.** We note, in passing, that this ambiguity does not necessarily inure to Spiritas' benefit.

6, 13–14 (Mo.App.2000). Summary judgment is inappropriate where the contract is ambiguous and parol evidence is required to discern the parties' intent. *Mo. Consol. Health Care Plan v. BlueCross BlueShield of Mo.*, 985 S.W.2d 903, 908 (Mo.App.1999). Further, because the issue of whether the changed conditions encountered by Spirtas were material is a fact question, partial grant of summary judgment was doubly inappropriate.

■■■ This case is unlike many construction disputes that end up in litigation over whether work performed is "additional work" requiring no compensation or "extra work" that is entitled to compensation. *See, e.g.*, JEFFREY KALINOWSKI ET AL., MO. CONSTRUCTION LAW § 8.4 (2d ed. 1996 & Supp.2000). Those cases often ultimately turn on whether the work was merely additional work necessarily required in performance of the contract or extra work entirely independent of the contract and not contemplated by the parties. *See American Drilling Serv. Co. v. City of Springfield*, 614 S.W.2d 266, 274 (Mo.App. 1981). "Extra work" is work not governed by the contract.[5] Whether work is "additional" or "extra" is a question of fact for the jury. *See Wisch & Vaughan Constr. Co. v. Melrose Props. Corp.*, 21 S.W.3d 36, 40 (Mo.App.2000). Also frequently litigated is the similar but somewhat different issue of "differing site conditions," where the disputants contest whether certain conditions (often rock, but just as easily environmental) were foreseeable or even, in some circumstances, misrepresented. *See* JEFFREY KALINOWSKI ET AL., MO. CONSTRUCTION LAW § 8.5 (2d ed. 1996 & Supp. 2000). Each of these types of disputes

arise because, in any construction contract, a variety of provisions are expressly aimed at shifting or allocating burdens of risk, whether they be unanticipated conditions, hidden conditions, undiscoverable conditions or simply desired or necessary changes made by the owner.

In the contract in question, here, both parties clearly understood from the outset that there were certain unknowns, and, because of the size of the project, it was not practical for either party to contract a lump sum for certain portions of the work. For example, the contract provided for removal of asbestos floor tile at a unit price because it was not practical to count each tile individually before demolition and much of the tile was also covered by carpet. So it was with the many of the other asbestos-containing materials in the building, which either could not be seen or which it was impractical to precisely count in drawing pre-bid specifications or responding to a bid request by a contractor. This principle even applied to the removal of light fixtures, which included (based on estimates) 18,000 light fixtures with more or less than that number to yield an adjustment to the contractor's compensation at the unit price of $4.68 per fixture.

By entering into a contract with a mixture of flat fee provisions and unit pricing based on deviations from projected numbers of units included in the base flat sum of the contract, the parties were attempting to foresee and deal with the risks of the unknowns that each faced. In the case of the contractor, the risk addressed was that a flat fee contract would be based on seriously underestimated conditions. In the case of the owner, the risk was that

---

5. Obviously, there are situations where contractors disagree on whether work is "extra work" (and, therefore, should be compensable) and where the owner orders the work to be done. In such situations, the issue of

whether there is additional compensation to the contractor is resolved later through negotiation or litigation. This is not one of those situations.

any flat sum bids would be inflated to cover the contractor's risk. Also of consideration was that inclusion of a certain number of units in the base bid would most likely be calculated by the contractor at a less than unit price basis.

The contract language, however, contemplated the possibility that the conditions actually encountered would materially differ from those anticipated in the initial bid process. The parties attempted to address such circumstances by setting up a process by which the compensation for the changed work would be negotiated and agreed upon. Here, however, a separate contract provision creates a latent ambiguity that was not amenable to summary judgment on the record presented to the trial court.

We, therefore, conclude that the trial court erred in entering partial summary judgment in favor of Spirtas on the issue of liability and the cause is remanded for a new trial on all issues. All other points raised deal with issues that are either unlikely to reoccur at trial or are premature for our consideration at this time. The judgment is reversed and remanded for a new trial on all issues.

JOSEPH M. ELLIS, Chief Judge, Presiding Judge, and HAROLD L. LOWENSTEIN, Judge, concur.