**Shannon L. BAIR, Appellant,**

**v.**

**William M. FAUST, Respondent.**

**No. SC 92904.**

Supreme Court of Missouri, En Banc.

July 16, 2013.

Brett T. Burmeister, Mark A. Gilmore, Burmeister Gilmore LLP, Independence, for Bair.

Paul S. Penticuff, Ambika Behal, Baker Sterchi Cowden & Rice LLC, Kansas City, for Faust.

MARY R. RUSSELL, Chief Justice.

The plaintiff in an automobile accident case was not present during voir dire or at the beginning of the second morning of trial before opening statements commenced. Her attorney initially informed the trial court during voir dire that the plaintiff would not be attending the trial. After conversations with the court and defense counsel, the plaintiff's attorney announced that the plaintiff could be present if given additional time. Upon motion of the defendant, the trial court excluded the plaintiff from the trial and allowed the defendant to argue an adverse inference. Because it was error for the trial court both to exclude the plaintiff and then to allow the defendant to argue an adverse inference, the trial court's judgment is reversed and remanded for further proceedings consistent with this opinion.

## I. Facts and Procedural Background

Shannon Bair[1] (Plaintiff) brought suit against another driver, William Faust (Defendant), for the injuries she sustained as a result of an automobile accident. During voir dire, Plaintiff's attorney made remarks indicating that Plaintiff would not appear during the trial, but he indicated that he would provide an explanation.[2] He asked the venire panel, "If I give you the reasons in the evidence in the case and she's not here at trial, but she's asking you to take in the evidence even though she's not here, would you be able to do that?" Plaintiff's attorney's question was the first notice that either the court or Defendant's attorney received that Plaintiff would not

1. Bair's lawsuit was filed under her maiden name. She has since married and her new last name is Gibbons.

2. A trial had previously been held in the matter, but it resulted in a mistrial. Plaintiff was

in attendance at the first trial. Aaron Smith represented Plaintiff at trial. After he filed a notice of appeal, Plaintiff terminated their relationship and hired present appellate counsel, Burmeister Gilmore LLP.

be present at trial. He stated that there was no medical reason for her absence.

On the second day of trial, before opening statements, both attorneys again raised issues to the court pertaining to Plaintiff's absence from trial. Defendant's attorney voiced frustration that Plaintiff's attorney was trying to create an impression that Plaintiff could come and go from the trial as she pleased and that she did not have to be in the courtroom to pursue her cause of action. Defendant's attorney feared that Plaintiff would attempt to make a "grand entrance" into the proceeding.

Plaintiff's attorney explained that his client's husband would testify that Plaintiff did not want to be in the same room with Defendant because she felt that Defendant had ruined her life.[3] Defendant's attorney was concerned that allowing another witness to explain Plaintiff's absence would be unfairly prejudicial to Defendant, and he asserted that the explanation would be inadmissible hearsay.

Defendant's attorney, who made at least three requests[4] that Plaintiff be banned from the courtroom during these discussions with the court, questioned the court whether he would be allowed to argue an adverse inference to the jury based on her absence. In response, the court noted that Plaintiff would not be allowed to make a "grand entrance" during the trial because she had failed to appear at voir dire or in the courtroom the second day of trial. The court then stated that, if Plaintiff arrived "in the next ten minutes, before [the jury was brought in]," she would be allowed to attend the trial. The court indicated that, if Plaintiff arrived after the beginning of opening statements, she would be excluded from the trial.

After contacting Plaintiff, her attorney advised the court that the soonest Plaintiff could arrive would be anywhere from 35 minutes to one hour, if the court ordered her to be there. The court indicated that it did not want to have the jury wait for Plaintiff's arrival. In addition to excluding Plaintiff, the court advised Defendant's attorney that he could use an adverse inference. This conversation followed:

[Defendant's attorney]: And I can have the jury draw an adverse inference against her based on her failure to appear here. And any evidence for anybody trying to give some sort of explanation for that is out.

The Court: Um-hum.

---

3. Defendant sent a private investigator to videotape Plaintiff's wedding in Mexico. Plaintiff also claimed that Defendant had run her off the road on purpose to cause the underlying accident and that he had made statements about her being "hot" in a local news outlet. Plaintiff found these events mortifying.

4. In reaching its conclusion that Plaintiff voluntarily chose not to testify or attend the trial, the dissent appears to ignore Defendant's attorney's multiple requests to the trial court both to exclude Plaintiff and make an adverse inference. While the trial court indicated early in the morning of the first day of evidence that Plaintiff would be excluded from trial, the record reflects that Plaintiff's attorney and Defendant's attorney did not find the trial court's initial statement to be a final ruling. Plaintiff's attorney continued to attempt to get Plaintiff to the courtroom as Defendant's attorney persisted in requesting that she be excluded and that he be allowed to make an adverse inference. Finally, after at least three requests by Defendant's attorney to exclude Plaintiff from the courtroom and that an adverse inference be allowed, the trial court ruled that Defense counsel could "refer to the empty chair," "talk about her lack of testimony" and then confirmed that "[s]he's excluded from the courtroom." If the court's initial statement had been the final, unprompted ruling the dissent suggests, it seems unlikely that Defendant's attorney would have repeatedly requested Plaintiff's exclusion and that he be allowed to make an adverse inference.

. . . .

[Defendant's attorney]: [S]he's not going to be here; in fact, she's been excluded from the courtroom and you can draw an adverse inference from the fact that she's not here today. Is that a fair statement?

The Court: I think that's a fair statement.

Shortly after this exchange, the court stated, "I'm going to let you go on an adverse inference." Defendant's attorney then asked for clarification as to what he would be allowed to argue to the jury. The court clarified, "I think you're entitled to point out the empty chair. I think you're entitled a question where she is. I think you're entitled to talk about the fact [that] you won't hear her version of events. And I'm going to leave it at that for now."

Plaintiff's attorney requested an additional 30 minutes to get Plaintiff to the courtroom, but the court again declined because the jury had already been waiting an hour. Finally, with Plaintiff's attorney insisting Plaintiff was on her way, the court brought the jury in after an hour and 30 minutes of waiting. The court confirmed to Defendant's attorney that he could refer to the empty chair and talk about Plaintiff's lack of testimony. The court noted that Plaintiff was excluded from the courtroom.[5]

During trial, Defendant's attorney took advantage of the court's decision to allow an adverse inference numerous times. In his opening statement, he referenced Plaintiff's absence at least 15 times. He told the jury that Plaintiff would not be present in the courtroom for the trial and that they could draw the inference that any testimony that Plaintiff would give would be unfavorable to her case. He concluded by telling the jury that the "non-present plaintiff was at fault for this accident[, and] [s]he's not here for a reason."

After the trial began, Plaintiff's attorney attempted to correct the damage done. Following opening statements, he moved for a new trial based on the court's decision both to exclude Plaintiff from trial and to allow an adverse inference during opening statements. After the close of evidence, Plaintiff's attorney again moved to prohibit Defendant's attorney from making an adverse inference during closing argument. The court denied the motion, and Defendant's attorney took multiple opportunities to refer to Plaintiff's absence and assert an adverse inference.

The jury returned a verdict in favor of Plaintiff in the amount of $60,000, but it apportioned 85 percent of fault to her, reducing her award to $9,000. Following the entry of the judgment, Plaintiff's attorney moved for a new trial, but the motion was overruled.

Plaintiff appeals, alleging that the trial court abused its discretion in failing to grant a new trial after both excluding her from the courtroom and allowing Defendant's attorney to argue an adverse inference based on her absence.[6]

---

**5.** Although Plaintiff was not allowed in the courtroom during the trial, she did come to the courthouse. Her husband testified on Thursday, the third day of trial, that she was in the building, had been there all day, and planned to remain in the courthouse until the jury reached a verdict. In addition, she provided an offer of proof as to what her testimony would have been.

**6.** This Court has jurisdiction over this appeal pursuant to Mo. Const. art. V, sec. 10, as the case was taken on transfer after disposition by the court of appeals.

## II.   Standard of Review

A trial court's denial of a motion for new trial is reviewed under an abuse of discretion standard. *In re H.L.L.*, 179 S.W.3d 894, 896 (Mo. banc 2005). Additionally, the court has broad latitude in determining whether to admit or exclude testimony, and absent an abuse of discretion, its decision will not be disturbed. *See Howard v. City of Kansas City*, 332 S.W.3d 772, 785–86 (Mo. banc 2011). An abuse of discretion occurs when a ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable that the ruling indicates a lack of careful deliberate consideration and shocks the sense of justice. *Watts v. Lester E. Cox Med. Ctrs.*, 376 S.W.3d 633, 637 (Mo. banc 2012).

## III.   The Trial Court Abused its Discretion in Denying the Motion for New Trial

The issue in this case relates to the trial court's decision both to exclude Plaintiff from the courtroom and to allow Defendant's attorney to argue an adverse inference based on her absence. Plaintiff argues that the trial court's denial of her motion for new trial on these issues was an abuse of discretion.

When a party is represented by counsel, she has the right to personally appear, or not, at her trial. *See Spirtas Co. v. Div. of Design and Constr.*, 131 S.W.3d 411, 415–16 (Mo.App.2004). That right to be absent from trial, however, must be tempered with the trial court's inherent authority and broad discretion in the control of the courtroom. *See Blessing v. Blessing*, 539 S.W.2d 699, 702 (Mo.App. 1976); *State v. Borman*, 529 S.W.2d 192, 194 (Mo.App.1975) ("It is the responsibility of the trial judge to maintain 'dignity, order and decorum' in the courtroom.") (cit-

ing *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)).

The record demonstrates the understandable frustration of the trial court with Plaintiff's attorney's actions regarding whether Plaintiff would be present at trial. The court indicated that it considered Plaintiff's initial absence prior to her exclusion from the courtroom a tactical maneuver. The trial court first learned of the possibility that Plaintiff would not attend the trial during voir dire. It was not until just before opening statements that Plaintiff's attorney confirmed that Plaintiff was not planning to attend trial and instead would have her husband testify as to why she was absent. After the strategy was unsuccessful, Plaintiff's attorney was left scrambling to get Plaintiff to the courtroom. Because the trial court did not want Plaintiff to make a "grand entrance" later during trial, it excluded her from participating in the trial in its entirety. The trial court had the inherent authority to make sure the trial was conducted in an orderly manner. *Borman*, 529 S.W.2d at 194. But Plaintiff argues that this purpose could have been served by directing the timing and manner of her entry into the courtroom and that her exclusion entirely, for the entire trial, was unnecessary and an abuse of discretion.

This Court need not resolve whether the trial court's decision to exclude Plaintiff entirely was within its discretion. Assuming, without deciding, that it did have such authority, the trial court abused its discretion in allowing Defendant's attorney to make an adverse inference about Plaintiff's absence from the courtroom. *Calvin v. Jewish Hosp. of St. Louis*, 746 S.W.2d 602, 605 (Mo.App.1988). It was fundamentally unfair for the trial court both to exclude Plaintiff from the courtroom and also allow an adverse inference about her absence. The two actions together resulted in Plain-

tiff suffering manifest injustice.[7]

■ The adverse inference rule that allows for "an unfavorable inference to be drawn against a party, knowledgeable of the facts of the controversy, who *fails* to testify," and it is well established that such failure may be used by an opponent in argument. *Pasternak v. Mashak,* 428 S.W.2d 565, 568 (Mo.1967) (emphasis added). An opponent may not draw an adverse inference, however, when the sole reason for the failure to testify was the opponent's motion to exclude the testimony. *See Barnes v. Kissell,* 861 S.W.2d 614, 620 (Mo.App.1993); *Calvin,* 746 S.W.2d at 605.

In *Calvin,* the trial court granted the plaintiff's attorney's motion to exclude the defendant's only expert medical witness. *Calvin,* 746 S.W.2d at 604. During closing argument, the plaintiff's attorney made an adverse inference indicating that the defendant had no expert medical witnesses willing to testify. *Id.* at 605. The plaintiff's attorney knew that his motion to exclude was the only reason the defendant had not presented expert medical testimony about the plaintiff's injuries, but the trial court refused the defendant's request that it instruct the jury to disregard the statement. *Id.* On appeal, the court noted that "[t]he exercise of judicial discretion 'should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair disadvantage.'" *Id.* (quoting *Ellis v. Union Elec. Co.,* 729 S.W.2d 71, 76 (Mo.App.1987)). *Calvin* held that the trial court abused its discretion and caused the defendant to suffer manifest injustice by granting the plain-

tiff's motion to exclude the defendant's medical expert *and* then allowing the plaintiff to make an adverse inference to the jury regarding the defendant's lack of a medical expert. *See id.*

In *Barnes,* the trial court excluded a defendant's medical expert as a "penalty" for the expert's failure to allow the plaintiff's husband to be present in the examination room during a medical evaluation. 861 S.W.2d at 619. During closing arguments, the plaintiff's counsel was allowed to argue an adverse inference based on the expert's failure to testify. *Id.* at 620. In *Barnes,* the court of appeals reversed the trial court's decision, highlighting that the plaintiff's attorney knew his actions were the reason that the defendant had not presented the expert's testimony.

*Calvin* and *Barnes* are instructive here. In both cases, the trial courts were reversed for allowing the plaintiffs' attorneys to take advantage of an exclusion by arguing adverse inferences to the jury. It similarly was error here. Moreover, here the error was more egregious, for while the attorneys in *Calvin* and *Barnes* made adverse inferences only in closing arguments, Defendant's attorney's adverse inferences were not limited to closing argument here. Defendant's attorney made repetitive adverse inferences during opening statements, instructing the jury that it could "draw the inference that any testimony [Plaintiff] would give would be unfavorable to her case." He concluded by insisting that the "non-present plaintiff was at fault for this accident[, and] [s]he's not here for a reason." He referred to her as the "nonpresent plaintiff" throughout

---

7. On the last day of trial, both the trial court and Plaintiff's attorney chose to put discussions made earlier in the proceeding on the record. At that time, the trial court acknowledged that the exclusion of a witness in combination with the allowance of an adverse

inference would be error. The court stated, "I think [the current situation] is far different than my excluding somebody from being a witness and then allowing an adverse inference. Because I do think that is error."

trial, and during his closing argument he urged the jury to make an adverse inference based on Plaintiff's absence.

The dissent takes issue with this Court's reliance on *Calvin* and *Barnes* rather than *Pasternak*. *Pasternak* is instructive in the event that a party chooses not to testify. But, because Plaintiff's absence from trial was due to the Defendant's motion to exclude her and the trial court's grant of that motion, *Calvin* and *Barnes* provide the proper framework through which to analyze such an exclusion and subsequent adverse inference.

Although Plaintiff was not present at the beginning of the trial, she was prohibited from later attending her trial because of the trial court's decision to grant Defendant's attorney's motion to exclude her from the courtroom. Once the court had excluded Plaintiff from trial, it abused its discretion in also allowing Defendant's attorney to make adverse inference arguments. Fundamental fairness had been lost, and Plaintiff suffered an unfair disadvantage resulting in manifest injustice. *See Calvin*, 746 S.W.2d at 605.

## IV. Conclusion

For the foregoing reasons, the trial court's judgment is reversed and remanded for further proceedings consistent with this opinion.

BRECKENRIDGE, STITH, DRAPER and TEITELMAN, JJ., concur.

WILSON, J., dissents in separate opinion filed.

FISCHER, J., concurs in opinion of WILSON, J.

PAUL C. WILSON, Judge.

The majority opinion holds that the trial court abused its discretion by excluding Plaintiff from the courtroom and then allowing Defendant to argue that the jury should draw an adverse inference from Plaintiff's failure to testify. If such a case ever presents itself, I likely would reach the same conclusion. But that is not **this** case. Here, Plaintiff freely chose not to attend her trial and freely chose not to testify on her own behalf. After warning her counsel that Plaintiff would not be permitted to come and go as she pleased, the trial court barred Plaintiff from entering the courtroom once the trial began. Whatever "unfairness" the majority opinion perceives occurred in this case was the natural and readily foreseeable result of Plaintiff's choices not to testify at, or even attend, her own trial. Accordingly, I respectfully dissent.

During voir dire, with no prior warning to or discussion with the trial court or opposing party, Plaintiff's counsel announced that Plaintiff would not be attending the trial. The next day, with the trial set to begin and the jury waiting, the court warned that Plaintiff could not change her mind after trial begins. Instead, she must be present from the beginning of trial or be barred from the courtroom for the duration. Plaintiff's counsel stated that, after further consultation following voir dire, Plaintiff again had chosen not to attend. At no time prior to the trial court's order barring the Plaintiff from the courtroom once the trial began did Plaintiff's counsel suggest that Plaintiff desired to testify. To the contrary, when questioned on this topic, Plaintiff's counsel stated unequivocally that Plaintiff had chosen not to testify and that he would not be using her deposition testimony for any purpose. Accordingly, the trial court's order enforcing Plaintiff's choice not to **attend** the trial by barring her from making a "grand entrance" in the middle of trial was not the basis for the adverse inference argument. Defendant would have been entitled to

that argument whether Plaintiff attended the trial or not. Instead, the basis for the adverse inference was Plaintiff's voluntary choice not to **testify,** and the trial court played no role in that decision—at least not until she tried to change her mind on the last day of trial.

Throughout the first three days of trial, Plaintiff's counsel repeatedly acquiesced in the trial court's rulings regarding Plaintiff's attendance and Defendant's right to argue an adverse inference. But, when it came time for Plaintiff to rest her case—and the ramifications of her choice not to attend the trial had become uncomfortably plain—Plaintiff suddenly tried to reverse course and requested that she be permitted to testify. Parties who attend their trials are free to change their minds about testifying as often as they like. But a party who makes an unprompted declaration that she will not attend or testify cannot later decide that she wants to testify, at least not once the trial court expressly has prohibited her from entering the courtroom and reference to her absence already has been made. Here, by the time Plaintiff tried to change her mind on the last day of trial, it was far too late for the trial court to unscramble the mess that her attempted change in strategy would create. So, when Plaintiff sought to change her mind and testify, the trial court's only options were either to hold Plaintiff to the choice she made or declare a (second) mistrial. It was not an abuse of discretion to choose the former.

This decision was not "clearly against the logic of the circumstances," or "so unreasonable and arbitrary that the ruling shocks the sense of justice," or so lacking in reason that it "indicates a lack of careful, deliberate consideration," or any of the other pejorative expressions that this Court routinely uses to describe an "abuse of discretion." The majority opinion studiously ignores these standards yet nevertheless brands the trial court's actions as an abuse of discretion.

Not only did the trial court not have the majority opinion's benefit of hindsight, Plaintiff's counsel deprived the trial court of any forewarning by deciding not to warn either the court or Defendant's counsel that Plaintiff had decided not to attend or testify. Without the luxury of hindsight, I cannot see what other course a reasonable trial judge should have taken. Even with this advantage, I do not agree that these actions were irrational, unreasonable, or unfair.

### What happened?

The majority opinion describes a scene in which the Plaintiff struggled valiantly to attend her trial but was turned away from the courthouse by an unsympathetic judge. Then, the trial court—seemingly seeking to add injury to such an insult—permitted Defendant to argue that the jury could infer from Plaintiff's refusal to testify that any testimony she might have given would have hurt her case. Rather than attempt to rebut the majority opinion's characterization of these events with one of my own, it is better to allow the trial record to speak for itself.

*Tuesday:* During voir dire, Plaintiff's counsel (referred to herein as "Counsel") announced to the entire panel:

COUNSEL: [M]y client's not going to be here ... for this trial. Do you have a problem with that?

VENIREPERSON A: Give me a reason. Just because your client doesn't want to be here?

COUNSEL: No, I'm going to give you some reasons. If I give you the reasons in the evidence in the case and she's not here at trial, but she's asking you to take in the evidence even though she's not here, would you be able to do that?

VENIREPERSON A: I believe so.

COUNSEL: Is there anybody here that would be able to do that?

VENIREPERSON B: I don't think I can do that.

COUNSEL: How come, [ma'am]?

VENIREPERSON B: Just by hearsay, by you saying it. I have to see. I can't just say, oh, she's injured here and—I just couldn't do it.

COUNSEL: Well, let's say that we brought all the evidence that satisfied your curiosity—

VENIREPERSON B: Well, the only thing is you're asking me not to have sympathy, but you're letting your client make the choice of—maybe she couldn't handle it, maybe she couldn't take the court session. You know, I feel like if it's her case, she's got to be here. There was a case here once I didn't want to be here and I was here. So sorry.

COUNSEL: And, [Venireperson C], you feel the same way?

VENIREPERSON C: Yes. . . . I do. If she's going to—I think she should be here.

COUNSEL: You think she should show up, huh?

VENIREPERSON C: Yeah, I think she should be here.

COUNSEL: I see several people nodding their head. What about out here? [Venireperson A], back to my original question about. . . .

\* \* \* \*

VENIREPERSON D: [approximately 60 seconds later, interrupting Counsel's questions on a different topic] But I think I have a question. Is there any good reason why the client—why your client couldn't be here? Like Skype or be up there?

COUNSEL: Well, you know, we'll get to that. And if you're seated on the jury, there will be some evidence about that. I'll give you an explanation.

Late that afternoon, the trial court identified the jurors and alternates and released the remainder of the panel. The court then excused the members of the jury and instructed them to return for an early start on Wednesday morning at 8:45 a.m., at which time they would be sworn in and the trial would begin.[1]

After the jurors left, Defendant's counsel noted that Counsel had made no prior disclosure—formal or informal—of the fact that Plaintiff would not be attending the trial. When he asked what evidence Counsel would adduce to fulfill the promise he had made to the jury, Counsel responded only that Plaintiff's husband would explain her absence. Counsel then confirmed that Plaintiff would not attend the trial and, when Defendant's counsel asked whether Counsel would be using Plaintiff's deposition testimony, stated unequivocally that he would not.

Perhaps shaken by the hostile response during voir dire, however, Counsel seemed to be concerned about Plaintiff's choice not to attend the trial:

---

1. After the remainder of the panel was excused, one of the two alternate jurors announced a schedule conflict. Both parties agreed to dismiss this juror and proceed to trial with only one alternate. Moreover, both parties—and the court—were aware that another juror would need to be excused if the trial lasted past Friday and that other jurors had expressed concerns about their availability the following week. These factors, of which both parties were aware and to which both had consented, made it imperative that the trial be concluded on Friday and were mentioned frequently by the trial court throughout the trial when the jury was not present.

I mean I need to talk to her today about, you know, what transpired in voir dire. Obviously, she has a strong dislike for your client and a dislike for what happened this spring.... And *I've got to go back to my client and tell her what happened and let her make that decision.*

(Emphasis added).

*Wednesday:* At 8:45, with the jury waiting to be seated and the trial ready to begin, the trial court asked Counsel about the Plaintiff's choices not to attend or testify.

COUNSEL: Well, my client *doesn't want to be here* for a few different reasons. Number one, she was ran [sic] off the road by this guy two years ago on purpose. And this guy has put her through two years of litigation. This guy has made public comments in the paper about her being hot. And last, but not least, they sent a private investigator down to secretly videotape her wedding vows in Cancun two months ago. She's mortified by all this. She doesn't want to be in the same room with this guy. I mean, she kind of sees it as it's ruined her life. And *she doesn't want to be here.* And I said, Shannon, I said, you know, that's your prerogative. But, you know, *this is what the jury can say.* And I talked to her about it last night. But, you know, and I think she has a valid excuse and a valid reason for *not wanting to be here, not wanting to be in the same room.*

COURT: What is the explanation going to be to the jury?

COUNSEL: You know, her husband is going to come here and say exactly what is going on. He'll testify about why she

doesn't want to come. They've talked about it.
* * * *
COURT: How is that not hearsay?
COUNSEL: It's a party admission. A party statement.
* * * *
COURT: *She didn't show up* in voir dire. *She's not here* today. *I'm excluding her from the courtroom.*[2] She won't be able to walk in in this grand entrance. I won't allow it.

(Emphasis added).

At this point, three things were absolutely clear: (1) Plaintiff had chosen, voluntarily and without prompting, not to attend the trial; (2) Plaintiff had chosen, voluntarily and without prompting, not to testify either in person or by her deposition; and (3) the trial court had accepted Plaintiff's choices but ordered that she would not be allowed to change her mind after the trial started and stage a "grand entrance" in an effort to manipulate the jury's sympathies. Without vacating these decisions, the trial court nevertheless gave the Plaintiff one last opportunity to rethink her choices:

COURT: I mean, if she *decides* to show up. If she gets here in the next ten minutes, before we bring the jury down; but if she doesn't come, *after we start opening statements and evidence, she's not going to come at all.*
* * * *
COUNSEL: *I need to go call my client,* I guess, and tell her exactly what you just told me. I don't have any other choice. *I'll leave it up to her.*
* * * *
COURT: Make your phone call. I want to get this thing going. We've got a

---

**2.** Notwithstanding suggestions to the contrary in the majority opinion, it appears that the trial court made this ruling **before** the Defendant's counsel first suggested that Plaintiff not be allowed to change her mind and enter the trial whenever she liked.

jury waiting upstairs. We'll see what happens.

COURT: [after a recess] What's the word?

COUNSEL: She can't get here within any time soon. *So let's go ahead.*

(Emphasis added).

Plaintiff thus confirmed—for the **second** time—Plaintiff's choices not to attend or testify. Not only did Counsel not indicate that Plaintiff wanted to change her mind, he expressly **conceded the point** by asking the court to proceed. The colloquy continued:

DEFENSE COUNSEL:.... I'm moving to dismiss this case with prejudice. His client is not even going to be here in court. Not even going to be here.

COUNSEL: Well, she can be here in an hour *if the judge orders her* to be here. I can have her here probably within 35, 40 minutes.

COURT: *I'm not going to do that. I've got a jury waiting.*

DEFENSE COUNSEL: [To Counsel].... [Y]ou have created the issue by her not being here. This is an issue all of your own creation, just in the same way [that Counsel's "inadvertence" led to a mistrial in the previous attempt to try the case]—

COURT: [Denying Defendant's mistrial motion....] You can use an adverse inference.

(Emphasis added).

Note that Counsel did not request that Plaintiff be allowed to arrive late or even hint that Plaintiff desired to testify. Instead, he simply conceded that Plaintiff would come, but only if the trial court ordered her to do so and was willing to delay the trial until she arrived. The trial court refused to order Plaintiff to attend her own trial. Throughout this discussion, the trial court made repeated references to

the fact that the jury was being kept waiting and that Counsel had been caught in a clear misrepresentation regarding certain exhibits he planned to use in opening statements. The court indicated that it believed Counsel was trying to manipulate the process unfairly and repeatedly admonished Counsel that this is "not the way we try lawsuits around here."

Defendant's counsel then objected to Plaintiff's husband being allowed to testify as to what he heard Plaintiff say were her reasons for not wanting to attend the trial. The court ruled that this testimony was not admissible. Counsel then tried to couch Plaintiff's reasons for deciding not to attend the trial as part of her claim for damages, arguing that he simply could argue those claims to the jury without any evidence, e.g., that Plaintiff had suffered mental anguish from Defendant forcing her to endure two years of litigation and invading her privacy by hiring an investigator to videotape her wedding on a public beach in Cancun, Mexico. The trial court ruled that such arguments were improper because these were not recoverable damages resulting from the automobile accident.

COURT: Who's going to say that they [Plaintiff and her groom] felt invaded [by learning later that their wedding had been videotaped]?

COUNSEL: Well, I guess the plaintiff would have to. And, I mean, *if we're going to exclude all this other stuff then I don't have any other choice but to get her here.*

COURT: I'm not going to wait an hour for her to get here. I suppose you could put your investigator on, but I don't know what I'm going to allow you to argue. Because [defense counsel's] investigator, I don't assume—

COUNSEL: Judge, let's do this, okay?

COURT: Let me finish. I am not finished. I don't imagine [defense counsel's] investigator is going to say, I invaded her wedding space; I invaded her vows; I was obnoxious to the extent that it ruined her wedding day. And the only evidence you're going to have to indicate that would be your client. And she hasn't graced us with her presence.

COUNSEL: Okay. May I make a suggestion? I'll have her here in 30 minutes.

COURT: I'm not waiting. We've had the jury up there for an hour now.

COUNSEL: What if we start opening statements and I have her here? I mean, it's opening statements and she'll be here in 30 minutes. *Judge, if we're going to exclude all this evidence, I mean, I've got to get her here. I had no idea that this was going to unfold like this.* I had no idea.

COURT: *That's why we talk about these things ahead of time.* And we don't play hide the ball. That's why we're up front in our litigation and we don't play hide the ball. That's why we have these issues in front of us to talk about and figure out what direction we're going to go.

* * * *

COUNSEL: Your Honor, I had [co-counsel] call the plaintiff and she's going to be here in 30 minutes. And I can start my opening statement and she'll be here for the remainder of the trial and [defense counsel] can, you know, not have to worry about weaving in the adverse inferences into his opening statement. *I didn't know this was going to unfold like this,* Your Honor. And if I had, *I would have told Shannon, look, you're going to have to get over your things and be here.*

COURT: Again, Mr. Counsel, *that's why we talk about things* [at the pretrial conference].

COUNSEL: How was I supposed to know it was going to come down like this? I had no idea.

COURT: "Judge, my client's not going to be here for the trial and here's why."

COUNSEL: This came up yesterday and nobody really jumped on me about it. . . . *Had I known this was going to come down like this today, I would have had her here first thing this morning.* Last night, I would have said, Shannon, you have to be here, the judge is upset with you, [defense counsel] is upset with you. I told her exactly what the jury told me yesterday. And if I'd known you'd be upset with me, I would have had her here, judge.

COURT: Instead of being coy last night, when [defense counsel] asked you point-blank "Where is your client?" you said, you'll have an explanation. Without being forthcoming and saying, here's the deal. I just don't get that. I'm sorry, I'm having a hard time wrapping my mind around the lack of being forthcoming, the playing hide the ball. I didn't try lawsuits that way and I don't get that.

(Emphasis added).

Counsel stated several more times that he could have the Plaintiff in the courtroom in "30 minutes" but never acknowledged that this amount of time (and far more) had passed since he first made this representation. Finally, 96 minutes after the trial court initially inquired about the Plaintiff's plans, the trial court's patience was exhausted:

COURT: This is just unbelievable. I'm bringing the jury down in ten minutes. If she's not in the door, she's out. . . . At 10:27, I'm bringing the jury down.

Thirteen minutes later, Counsel told the Court that Plaintiff had just gotten out of the shower. Counsel asked for another five minutes, claiming Plaintiff could arrive "any minute." The Court refused to delay the trial further. Responding to the defense counsel's request for the "stipulations" going forward, the trial court noted that Plaintiff would not be allowed to attend once trial began and that Defendant could refer to Plaintiff's "empty chair" and ask the jury to draw a negative inference from "her lack of testimony." The Court made no reference to whether Plaintiff could testify because Counsel had not asked that she be permitted to do so.

As recounted below, there was a further discussion of these issues after the trial recessed Wednesday evening. During this off-the-record discussion, the trial court stated that it would reconsider its rulings regarding Plaintiff's presence on Thursday morning if Counsel was able to offer any authority suggesting those rulings had been error.

*Thursday:* Counsel failed to present any authority Thursday morning suggesting that the trial court's orders the previous day were incorrect. Instead, the trial court later stated—without correction—that Counsel said it *"was water under the bridge and [Plaintiff wasn't] going to pursue it."* [Emphasis added]. Based on that representation, the trial proceeded as it had begun.

Later Thursday, Counsel made an offer of proof concerning Plaintiff's husband's testimony "regarding the plaintiff's mental state of mind and present physical state, both before and after this crash and with regard to this litigation and this lawsuit." After this proffer, and after hearing arguments from counsel, the trial court ruled that Plaintiff's husband could testify about "his observations that relate to the accident and her injuries related to

the accident[.]" But the Court ruled that Plaintiff's "anxiety and her angst and her feelings with regard to the litigation of this case is not going to come in as a measure of damages[.]" Counsel responded much as he had on Wednesday:

COUNSEL: And then I guess *I'm kind of left in a pickle* here because *at the beginning of all this, when I said, if my client doesn't come to trial, then I'm going to give you a good explanation* for why she doesn't want to come. And my client's explanation was that she's been intimidated and scared and doesn't want to come. So I don't have an explanation for them?

COURT: (Shook head.)

COUNSEL: And now I can't bring her into [the] court to tell them otherwise.

COURT: Her husband is not going to testify to that.

COUNSEL: And the *Court's excluded plaintiff* from being in the courtroom.

COURT: *I gave you a chance to get her here before we got started, didn't I ?*

COUNSEL: *Yes.*

COURT: *And I said after we get going, I'm not going to let her come in here.*

COUNSEL: *Okay. All right.* Thank you, Your Honor.

[Emphasis added].

By the end of Thursday, the cost of Plaintiff's choices not to attend the trial or testify had become clear. But, at least to this point, Counsel had not moved for reconsideration of the order enforcing Plaintiff's decision not to attend, nor had he made any statement about her testifying other than that he recognized she could not do so in light of her choices and the trial court's rulings regarding them.

*Friday:* Before the jury was brought in for the last day of trial, Counsel began to re-characterize Plaintiff's choice not to attend the trial as the trial court having "excluded" her from participating. Sensing that Counsel was attempting to lay the groundwork for the very appellate arguments that the majority opinion now finds so persuasive, the trial court made a detailed record regarding its rulings:

COURT: I want to make a record with regard to this *alluding* to the fact the plaintiff was excluded from trial. Because I think it needs to be clear on the record what transpired and how that all came about.

COUNSEL: I agree.

COURT: So *I agree with you that a plaintiff is not obligated to come to court to pursue the claim they have brought.* They have the right not to. And though I haven't seen it done in my courtroom, or in Division 15, I know it's been done. But it's typically done for a good cause, good reasons, those being the plaintiff being infirmed [sic] or disabled or it would be to their psychological detriment to attend trial. And it's usually well documented by therapists and treating physicians and, you know, with whoever may be necessary to prove that. And then it is proved for a good cause and they are allowed to not be present at trial, but it is certainly something that is discussed beforehand.

I think there is ample case law that says *if a party chooses not to participate in the trial, and not to act as a witness* when they have facts and circumstances that are within their knowledge that they can relate to the jury, that *there is a basis for an adverse inference.*

Now, I was completely unaware that your client wasn't going to show up until you said that in voir dire. I didn't even notice that she was not here until you

said that. So *I certainly think we should have talked about it* ahead of time so we were on the same page, *so you knew what the ramifications of that were,* so I could be apprised of the situation. And I didn't know anything about it until you mentioned it in voir dire and then you promised this explanation for it. *You represented to the jury* panel that she wasn't going to be there and thereafter *you represented to [defense counsel] and myself* that *she wasn't going to be there.*

Again, *that's her prerogative.* Although there [is] no documentation that she had this phobia or this fear or this angst about coming here and presenting her case in open court with many protections. There's nothing that I could rely upon other than your representation that she was afraid to be in the same courtroom or anxious about being in the same courtroom as the defendant. And I have yet to be presented with anything documentary in nature that would indicate that to me.

So, based upon that, I told you—I think it was the next day, [Wednesday,] *when we finally found out that she wasn't going to be here* and you finally gave your reasons for her not being here, that I told you that based upon that, *I was inclined to allow [defense counsel] to make an adverse inference to that effect* and to talk about the empty chair, as plaintiffs do all the time when a defendant doesn't show. All the time when a defendant doesn't show. They love to talk about the empty chair. And I was inclined to let [defense counsel] do that. And then *I was also inclined with regard to your explanation and the testimony of plaintiff's husband to limit that to that which I consider to be legally and factually relevant.*

And then, once those parameters were laid, *you indicated that you'd get your client here. So the tune had changed.* And we had that discussion for well over an hour. Closer to an hour and a half, I think. And during that time *you said you'd get your client here.* I think it started at 45 minutes and then half an hour, and then I think we went down to 15 or 20 minutes that you'd get your client here. *And I relented. And I said if you get your client here, she can participate.* I think it was the last time that you indicated to me that you'd get her here was ten minutes. And I gave you a time certain to get her here; I think it was 10:27 or 10:28, or something like that.

We took a recess and I came back out on the bench at 10:28 or 10:29, or whatever it was, and inquired as to whether your client was here, because we had the jury waiting for an hour and a half, we'd had the court delayed for an hour and a half. And you indicated that your client had just gotten out of the shower. Which indicated to me that it would be another Lord knows how long before she could get here and that she was not prepared to come at any time the previous hour that we had been discussing this situation.

And so *rather than leaving the jury upstairs waiting, rather than delay the proceeding any more than we already had, which was over an hour and a half, I elected to proceed. And we did that without your client being present.* That night we discussed it again, and I told you that if you or anybody presented me with the case law that indicated I had exceeded my authority, I would revisit it and I would allow her to participate.

*We got here yesterday [Thursday] morning and you indicated that it was water under the bridge and you wer-*en't *going to pursue it.* And I said, okay, then we continue. And we have continued in that vein throughout the course of the trial.

I continue to think *it was a tactical maneuver* and when it didn't play out as you had anticipated, things changed. And so now *I think you're trying to couch it in terms of my excluding your client to set up any appeal that you may have.* And that's fine. But *what you term to be an exclusion I guess I would term to be her voluntary election not to participate.* Because *I gave her the opportunity;* I gave you the opportunity to get her here; I *invited us to revisit the issue* yesterday morning. You *elected* not to.

So, you know, you term it as you may, but *I think it is far different than my excluding somebody from being a witness and then allowing an adverse inference.* Because I do think that is error. But, I mean, *I think she had ample opportunity to be here to present her case, to have her day in court, and she voluntarily elected not to.*

\* \* \* \*

I want to make it crystal clear on the record, though. In voir dire, in front of a panel of 45, *Plaintiff made a representation that she was not going to be here in trial* and asked if any of the jurors or potential jurors had a problem with that and promised an explanation. Thereafter, when we had a discussion at the bench, *it was represented to both [defense counsel] and I that she wasn't going to be here.*

And that evening you were evasive and coy about the reasons why. As I was getting on the bench, I heard you and [defense counsel] talking about it. [Defense counsel] at that time didn't pursue it. And then we came and finally talked

about it the next morning and finally got an explanation for why she wasn't going to be here.

And then *when you learned that I was going to allow an adverse inference,* which I think I'm allowed to under the law, and *when you learned that I was not going to let her husband testify to some of the things that you had anticipated him being able to testify to,* because they are not legally and factually relevant, *you changed your tune and put me in a box and started claiming that your client could indeed be here for the trial of her own cause.*

Which makes me think that the whole episode and *the whole manufacturing of this was disingenuous as all get-out.* I've got to say that. And I envisioned, again, that I wasn't going to allow her to come waltzing in here, once we had started the opening statement and the evidence in dramatic fashion, like she owned the place or like she was on stage. I wasn't going to allow her to do that.

And [defense counsel] is right. I have the inherent authority to control how a trial is conducted in this courtroom. I have the inherent authority to assure that it is a level playing field. And if I allowed her to do that, come waltzing in here at her discretion whenever she pleased, which I envisioned happening, I would have placed Defendant at a huge disadvantage, an unfair disadvantage. And I'm not going to allow that to happen.

*I gave you a chance to get her here.* You told me that you could get her here in a particular amount of time; I think it was 10 or 15 minutes. And then when I came out here, you said she was just getting out of the shower. I can't allow that to happen. I can't allow that type

of manipulation of the system, of this Court, of the process, to happen.

\* \* \* \*

So, again, I think by you claiming that I have kept her out of the courtroom, I think when all is said and done, *it was and continues to be a voluntary act on her part, and that was the plan from the get-go.* And it only changed when it *didn't go as anticipated or play out as you had anticipated* it playing out.

(Emphasis added).

The foregoing excerpts paint a very different picture from the one described in the majority opinion. The trial court maintained a clear record on these issues throughout the trial and, just to avoid precisely the mischaracterization now adopted by the majority opinion, recounted its actions and justifications on the last day of trial. The majority opinion may not agree with the trial court's rulings and, in hindsight, may believe that different rulings would have produced an outcome that was more "fair." But, the trial court's comments eliminate—or at least should eliminate—any suggestion that its actions were irrational or capricious. These comments demonstrate instead that the trial court was consistent, patient, and reasonable and that it acted at every step with an objectively evident purpose to treat all parties fairly. This is the very antithesis of an abuse of discretion.

### There was no abuse of discretion

Plaintiff decided she did not want to testify at trial—or even sit in the courtroom. That is her right. The trial court had no authority to force her to attend or punish her for not attending. However, the trial court had inherent authority to ensure that the trial was conducted fairly and, in the exercise of that authority, was entitled to hold Plaintiff to her choice not to attend and prevent her from coming

and going as she pleased. For the reasons articulated throughout the trial, the trial court did not abuse its discretion by ordering that Plaintiff—having voluntarily chosen not to be present at the scheduled beginning of the trial—could not change her mind and attend some parts of the trial while boycotting others. It appears that the majority opinion concedes the reasonableness of this action or, at least, is not prepared to brand it an "abuse of discretion."

Plaintiff also has a right to not testify in aid of her suit, and the trial court has no authority to force her to testify in her own case-in-chief or rebuttal. But the law is and always has been that the jury may draw a negative inference from the fact that Plaintiff had first-hand knowledge of relevant facts and chose not to testify. *Pasternak v. Mashak*, 428 S.W.2d 565 (Mo. 1967). Therefore, from the moment Plaintiff voluntarily chose not to offer testimony—a choice Counsel confirmed to the trial court both before and after the trial began—Plaintiff opened herself to such an inference. In fact, the trial court had no choice but to allow Defendant to argue such an inference. *See Pasternak*, 428 S.W.2d at 568 ("trial court's refusal to permit such [adverse inference] argument when proper may constitute reversible error").

Plaintiff's argument—at its very, very best—is that she should have been allowed to change her mind about not testifying. After Counsel found out that Plaintiff's decision opened her up to an adverse inference, and after Counsel found out that the trial court would not let her husband testify concerning Plaintiff's hearsay statements as to why she did not want to attend the trial, Plaintiff argues that she should have been allowed to change her mind, notwithstanding that it was the last day of trial and Counsel already had told the jury she would not be testifying. That is Plaintiff's very best argument, and it falls very short of being good enough.

As noted above, there was nothing unfair or surprising about Defendant being allowed to argue an adverse inference in light of Counsel's unequivocal statement that Plaintiff would not testify. Nor was there anything unfair or surprising about the trial court's decision not to allow Plaintiff's husband to offer hearsay testimony regarding facts that have no legal or factual relevance to Plaintiff's claims. And, even if Counsel was uncertain about these two basic legal tenets—or wanted some insight as to how the trial court might apply them before allowing Plaintiff to make such strategically important decisions—Counsel could have brought a motion in limine or otherwise raised these issues at the pretrial conference. Counsel was not obligated to do so but, having chosen not to let Defendant's counsel or the trial court in on Plaintiff's decisions until after the trial began, Counsel cannot complain that Plaintiff would have made different choices if she had known the ramifications of those choices in advance.

The majority opinion concludes that the trial court abused its discretion by allowing Defendant to argue an adverse inference after "excluding" Plaintiff from the courtroom. In so holding, the majority opinion relies heavily on two court of appeals decisions, *Calvin v. Jewish Hospital of St. Louis*, 746 S.W.2d 602 (Mo.App. E.D.1988), and *Barnes v. Kissell*, 861 S.W.2d 614 (Mo.App. W.D.1993), which bear no similarity to this case. Moreover, the majority opinion virtually ignores this Court's decision in *Pasternak*, which should be controlling, and thereby sacrifices what until now has been a clear and useful distinction regarding such adverse inferences.

*Calvin* and *Barnes* hold that a party cannot argue an adverse inference based

on the failure of a **non-party witness** to testify when the party arguing the inference was responsible for the witness's absence in the first instance. These cases are correct as far as they go, but they have no application here. An adverse inference is never proper when referring to a non-party witness unless the party arguing the inference demonstrates that the witness was **available for the other party to call.** *Hill v. Boles,* 583 S.W.2d 141, 145 (Mo. banc 1979) ("rule in Missouri is that the raising of a negative inference in argument from a party's failure to produce a witness is improper if the witness is equally available to both parties"). In *Calvin* and *Barnes,* the parties arguing the adverse inference could not make this showing because, in each case, that same party had moved to have the witness excluded and, therefore, was responsible for the witness being "unavailable."

In *Pasternak,* however, this Court held that *"[a]vailability is not a factor* governing the right to comment when a *party,* as distinguished from a *non-party witness,* does not testify." *Pasternak,* 428 S.W.2d at 569 (emphasis added). This "principle [regarding availability] is sound but it relates to the deposition of a *witness,* not a *party.* Different rules apply when a *party* having knowledge of the facts *fails to testify." Keith v. Burlington Northern R. Co.,* 889 S.W.2d 911, 919 (Mo. App. S.D.1994) (emphasis added).

Here, Plaintiff chose not to testify and Defendant argued an adverse inference based on that decision. Under *Pasternak,* the reasons why Plaintiff did not testify are not relevant; therefore, so too are *Calvin* and *Barnes.* In a proper case, justice might require a party with a proven and compelling excuse for not testifying to be protected from an adverse inference. But this is not that case. Here, Counsel announced at the beginning of trial Plain-

tiff's unequivocal and wholly voluntary choice not to testify. The trial court's only role was to refuse to allow her to change her mind on the last day of trial when the consequences of her choice had become too onerous.

The majority opinion concludes that the trial court's decision not to grant a new trial due to Defendant's adverse inference argument was an abuse of discretion. To constitute an abuse of discretion, however, it is not enough for an appellate court in hindsight to disagree with the trial court's actions or their effect and then invoke the talismanic emblem of "fairness." Instead, the appellate court must find that "the trial court's decision was *against the logic* of the circumstances *and* so *arbitrary and unreasonable* as to shock one's sense of *justice." Berry v. Volkswagen Grp. of Am., Inc.,* 397 S.W.3d 425, 431 (Mo. banc 2013) (emphasis added). *See also State v. Roggenbuck,* 387 S.W.3d 376, 382 (Mo. banc 2012) ("abuse of discretion [occurs] when it is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration").

"If reasonable people can differ about the propriety of the action taken by the trial court, then it *cannot be said* that the trial court abused its discretion." *Newman v. Ford Motor Co.,* 975 S.W.2d 147, 151 (Mo. banc 1998) (internal citation omitted). I disagree with the majority opinion's conclusion that the trial court erred, and I disagree with the majority opinion's conclusion that the trial court's actions were illogical, unreasonable, arbitrary, ill-considered, careless and/or shockingly unjust.

Far from being reckless or out of control, the record demonstrates that the trial court: (1) made the best rulings possible at the time the issues were presented; (2) never subsequently was provided with any

factual or legal reason compelling enough to divert from rulings already made; and (3) even assuming that there was a more perfect path for this trial court to walk, such sureness of foot seldom can be achieved when a party chooses surprise and the need for nearly instant decisions over the more relaxed and contemplative environs of a pretrial conference. For these reasons, I believe this Court should affirm the judgment. Accordingly, I respectfully dissent.